# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| Ford Lumber & Building Supply, Inc. ) | ASBCA Nos. 61617, 61618, 61619 |
| ) | |
| Under Contract No. DACA27-1-96-9 ) | |

APPEARANCE FOR THE APPELLANT:  Timothy D. Hoffman, Esq.
　　　　　　　　　　　　　　　　Dinsmore & Shohl LLP
　　　　　　　　　　　　　　　　Dayton, OH

APPEARANCES FOR THE GOVERNMENT:  Michael P. Goodman, Esq.
　　　　　　　　　　　　　　　　　Engineer Chief Trial Attorney
　　　　　　　　　　　　　　　　 Nicole E. Angst, Esq.
　　　　　　　　　　　　　　　　　Engineer Trial Attorney
　　　　　　　　　　　　　　　　　U.S. Army Engineer District, Louisville

## OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON THE GOVERNMENT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Pending before the Board is the motion to dismiss filed by respondent the United States Army Corps of Engineers (Corps or government). These appeals arise from a 1996 Base Realignment and Closure (BRAC) Lease in Furtherance of Conveyance for land that was previously part of the Jefferson Proving Ground, in Jefferson County, Indiana. The government asserts that appeal 61617, for damages to a building and generator caused by a government contractor "in the late 1990s," is barred by the statute of limitations; that appeal 61618 requesting a reduction in the purchase price of property was not premised upon a valid claim because it did not state a sum certain; and that appeal 61619 seeking reimbursement of asbestos-related remediation costs and fines should be dismissed for failure to state a claim upon which relief can be granted (gov't mot. at 7-11). Because the government cited documents beyond the complaint in its motion, the Board notified the parties that it intended to treat the government's motion as a motion for summary judgment. The order specifically noted that the opposition to the motion to dismiss filed by appellant, Ford Lumber & Building Supply, Inc. (Ford), stated that it "could provide additional testimony" regarding the "real facts" of the appeal. The Board informed Ford that "it should provide such relevant evidence in the form of declarations in response to this order." (Bd. corr. Order dtd. Jan. 8, 2019) For the reasons described below, we grant the government's motion in part, and dismiss appeals 61617 and 61618, but deny the government's motion with regard to appeal 61619.

On October 16, 1995, the Corps issued an invitation for bids for the sale of approximately 3,400 acres of the Jefferson Proving Ground in Jefferson County, Indiana (R4, tab 8 at GR4_79, 88). Mr. Dean Ford, president of appellant, was the successful bidder (R4, tab 8). The parties entered into a Lease in Furtherance of Conveyance (LIFOC)[1] on May 13, 1996 (*id.* at GR4_78). The initial term of the lease was 5 years, or until delivery of the final deed, whichever was sooner (R4, tab 8 at GR4_63), but this lease term was modified to 50 years by Supplemental Agreement No. 3 on November 25, 1997 (*id.* at GR4_167).

The lease provided that the government would transfer the property to the awardee once environmental clean-up made the property suitable for transfer (R4, tab 8 at GR4_62). The contract made clear that there was asbestos and lead paint in the property to be transferred (R4, tab 8 at GR4_93). ("The facilities at Jefferson Proving Ground contain asbestos. The asbestos contains materials that are believed to be nonfriable. The family housing units were constructed prior to 1978 and lead-based paint is present."). The contract additionally provided at ¶ 2.3.5 that it would issue a Finding of Suitability for Transfer (FOST) that:

> [W]ill indicate that all remedial actions necessary to protect human health and the environment have been taken to the satisfaction of the concerned regulatory agencies with jurisdiction over the property, and will identify, to the extent such are required to protect human health and the environment, appropriate use restrictions to be included as covenants in the instruments of title conveyance.

(R4, tab 8 at GR4_84)

The LIFOC indicated that additional environmental restrictions may apply:

> [A]s soon as the Finding of Suitability to Transfer (FOST) is executed by the Army for the Leased Premises, or a portion of said Leased Premises, and said Leased Premises may be conveyed consistent with the requirements of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 United States Code (U.S.C.), Section 9620 (h), as amended, and other legal and policy

---

[1] A LIFOC is commonly used by the government as a means of transferring property from itself to private entities while allowing for environmental remediation by the government prior to full conveyance of title.

requirements, the Secretary intends to convey to the Buyer/Lessee by one or more quitclaim deeds, for said property or portions of said property, *subject to any necessary restrictions, reservations, conditions, and exceptions*, and the Buyer/Lessee hereby agrees to accept such conveyance(s) as soon as the above-referenced conditions are met....

(R4, tab 8 at GR4_63) (emphasis added)  The contract additionally provided that the Army will effectuate conveyance of title to the property offered for sale herein, subject to appropriate covenants, restrictions, and other reasonable and necessary limitations on use of the property (*id.* at GR4_84).

The LIFOC provided for indemnification by the lessee to the government and by the government in favor of the lessee as follows:

14. INDEMNITY

a. The United States shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Lessee, or for damages to the property or injuries to the person of the Lessee's officers, agents or employees or others who may be on the Leased Premises at their invitation or the invitation of any one of them, and the Lessee shall indemnify and hold the United States harmless from any and all such claims, not including damages due to the fault or negligence of the United States or its contractors.

b. The Army shall hold harmless, defend, and indemnify in full the Lessee and any successor, assignee, transferee, lender, or sublessee of the Lessee as provided for in, and subject to the conditions set out in, Section 330 of the Department of Defense Authorization Act of 1993, and to otherwise meet its obligations under the law.  To the extent that these persons or entities contributed to any such releases or threatened release, this indemnification shall not apply. The deed(s) of conveyance will include the covenants required by Section 120(h), 42 U.S.C., Section 9620(h).

c. The Lessee shall indemnify and hold harmless the Government from any costs, expenses, liabilities, fines, or

3

penalties resulting from discharges, emissions, spills, storage, disposal, or any other action by the Lessee giving rise to Government liability, civil or criminal, or responsibility under Federal, state or local environmental laws.

(*id.* at GR4_68)

The reference in paragraph b of the indemnification clause to Section 330 refers to Section 330 of the National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, 106 Stat. at 2315, 2371, 10 U.S.C. § 2687 (note). This uncodified provision provides, in relevant part, that:

> Except as provided in paragraph (3) and subject to subsection (b), the Secretary of Defense shall hold harmless, defend, and indemnify in full the persons and entities described in paragraph (2) from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance or pollutant or contaminant as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.

106 Stat. at 2371. Paragraph 3 excludes from coverage "persons and entities" that "contributed to any such release" (*id.* at 2372). Indemnification is not available, unless the person or entity seeking indemnification "notifies the Department of Defense in writing within two years after such claim accrues or begins action within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the Department of Defense" (*id.*).

The reference in paragraph b of the indemnification clause to Section 120(h), refers to the Comprehensive Environmental Response Compensation and Liability Act (CERCLA, also known as Superfund) Section 120(h), 42 U.S.C. § 9620(h); requiring the government to provide notice of the type and quantity of hazardous substances, a description of remedial action taken and, relevant to this appeal, a covenant warranting that all remedial action necessary to protect human health and the environment with respect to hazardous substances remaining on the property has been taken prior to transfer, and that any additional remedial action found to be necessary after the date of transfer will be taken by the United States. 42 U.S.C. § 9620(h)(3)(A). However, the covenant regarding remediation is not available to a "potentially responsible party," that

4

is, a party that contributed to the contamination, with regard to that transferred property. 42 U.S.C. § 9620(h)(3)(B).

Ford alleges in its claim, which we treat as its complaint, that in the late 1990s, while removing fuel tanks, "contractors hired by the Army damaged a generator and building located on the property" (R4, tab 3 at GR4_14). Ford additionally alleges that "these claims have been discussed with Army representatives over phone and email over the years" (*id.*). Ford's counsel asserts that "[t]he claim was actually made timely (years ago) by the Appellant and the Respondent unilaterally informed the Appellant that it would wait until the final deeds were executed to decide it" (app. resp. at 1), and that it was "told repeatedly over the years that the proper time to submit a claim on the generator and building damage was near the time frame when the final parcels would be transferred" (app. opp'n at 12). Ford's counsel additionally speculated that it "is highly probable that Army personnel who passed this information along to the Fords made mistakes, since the 6-year statute of limitations on claims had just gone into effect the year before" (*id.*).

Additionally relevant to these appeals, the transferred property included portions of over three miles of above-ground insulated steam lines. In the *Jefferson Proving Ground, South of the Firing Line, Final Asbestos Survey Summary Report: Volume IV (Building 501 through Building 903)*, September 1993 report (Final Asbestos Report), the Corps' contractor that drafted the report reported the presence of asbestos in the outside overhead insulated steam lines. (R4, tab 7 at GR4_55)[2] On the record before us, there is no evidence that this report was incorporated into the invitation for bids or the LIFOC.[3] The LIFOC does reference a "Draft Remedial Investigation for Jefferson Proving Ground (July 1994)" that was to be attached as an exhibit to the LIFOC (R4, tab 8 at GR4_73); however, the exhibit is not contained in the Rule 4 file submitted by the government, or in the version of the LIFOC submitted by appellant. The Final Asbestos Report was referenced in the Finding of Suitability to Transfer Remaining Parcels, March 2010 (app. supp. R4, tab A at Ford-53, 62, 67) and the Finding of Suitability to Transfer Remaining Parcels 1-7, December 2014 (R4, tab 11 at GR4_211).

In the fall of 2010, Jim Reed, a former employee of Ford, approached Ford for permission to remove old steam pipes on the property, in exchange for the scrap metal (app. supp. R4, ex. 2, Ford decl. ¶¶ 7-8; R4, tab 5 at 1). Mr. Ford told Mr. Reed that he

---

[2] Ford designated its claim documents as its complaints in these appeals. While we cite to certain facts relevant to appeal no. 61619 submitted by the government that go beyond the claim documents, we still consider them in the light most favorable to Ford.

[3] We note that that invitation for bids contained in the Rule 4 file is missing exhibit D "Community Environmental Response Facilitation Act Report / Draft Remedial Investigation" (R4, tab 8 at GR4_61).

was not authorized to give permission and that Mr. Reed would need to obtain permission from the Army (*id.* ¶ 7). Mr. Reed subsequently obtained permission from Ken Knouf, Army site manager, who stated that the pipe contained plaster of paris, so he had no objection. The work was additionally performed with the knowledge of Paul Cloud, the Army's environmental coordinator (*id.* at ex. A). According to Mr. Ford, the "pipes had been deteriorating for years, and had even fallen on the ground in some places" and constituted a health and safety hazard (*id.* ¶ 7). Mr. Reed additionally alleges that approximately a quarter of the insulation was already on the ground, and that the Army would simply pick-up fallen pieces of insulation. Mr. Reed additionally stated that fallen insulation was "mowed over" by department of corrections prisoners "for years" (*id.* at ex. A). Mr. Lamb, who works in a building on the former Jefferson Proving Ground additionally provided a declaration that the insulation was decaying and "was falling off every time there was a storm" (*id.* at ex. B).

Ford was subsequently contacted by the Indiana Department of Environmental Management (IDEM) regarding asbestos contamination from the steam pipes. Ford hired an asbestos contractor to clean-up the contamination and incurred costs for the clean-up, plus a fine from the IDEM, and attorney fees (*id.* ¶¶ 9-10; R4, tabs 5, 9).

In December 2014, the government issued a FOST for the remaining parcels to be transferred to Ford. The FOST included, in Enclosure 9, environmental restrictions and restrictive covenants for the transferred property. The FOST provides that that deed will prohibit residential use of parcels 1 through 4 and part of parcel 5, as well prohibiting the use of groundwater on parcels 2 and 4 and part of parcel 5, and restrictions on excavations for parcel 1. (R4, tab 11 at GR4_234)

In a letter dated November 14, 2017, Ford asserted a certified claim in the amount of $197,000 for the damaged generator and building, based on price quotes provided in 2009 and 2010, for the damage purportedly caused in the "late 1990's" (R4, tab 3). The claim letter asserts that "[o]ver the 20-year duration of our Lease in Furtherance of Conveyance, Army personnel have advised us to wait to submit claims until the final parcels of [Jefferson Proving Ground] are near to the time of transfer" (*id.*). The government did not issue a final decision on Ford's claim and Ford appeals from the deemed denial of the claim. This claim was docketed by the Board as ASBCA No. 61617.

In a second letter, with the same date, Ford asserted a claim regarding land use restrictions placed on parcels 1 through 7 in the final FOST, including a restriction against residential use for a portion of the property (R4, tab 4 at GR4_18). In the document Ford alternatively requests that the government "please remove residential restrictions" or provide "a corresponding reduction in the purchase price of the land" (*id.* at GR4_19-20). Ford's letter does not request a specific reduction on the amount of the purchase price for the land, rather it notes that purportedly similar building lots near the

6

property in question are assessed "at or above $20,000 per acre" (*id.* at GR4_19). Ford notes that 123 of 770 acres in question could be valued at $2,575,620 at the assessed values, before noting that the remaining acreage is "not as valuable" but that the "interior woods certainly suffers from these restrictions as well." (*Id.* at GR4_19-20) Ford refers to lost rental income of $864,000 over the next 30 years for parcel 5 (*id.* at GR4_18). The claim does not address the reduction in value of parcels 2-4, 6, and 7. In a final decision dated February 13, 2018, the Corps contracting officer denied the claim on the basis that the claim failed to set forth a sum certain (R4, tab 1). On appeal to the Board, this claim was docketed as ASBCA No. 61618.

In a third letter, again with the same date, Ford asserted a claim for expenses incurred in remediating asbestos from the above ground steam pipes. The claim asserts that the government authorized a contractor to remove steam pipes from the property, still owned by the government, in exchange for the scrap metal recovered. The letter also asserts that the government monitored the progress of the contractor; and that the dismantled steam pipes exposed material that was later determined to be asbestos. IDEM notified Ford and the government of an environmental hazard and the government refused to acknowledge its involvement and Ford was forced to perform remediation activities on the property at a cost of $457,259, including a fine assessed by IDEM, and attorney fees (R4, tab 5 at GR4_21-22). In a final decision dated February 14, 2018 the contracting officer denied Ford's claim, finding that Ford had failed to request written permission from the government to make any alterations to the property and the lease expressly placed liability for cleanup of hazardous materials on Ford, and that Ford was to indemnify the government for any costs of environmental remediation (R4, tab 2 at GR4_11). Ford appealed to the Board from the final decision and the appeal was docketed as ASBCA No. 61619.

DECISION

## I.     Standard Of Review

Ford bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13 BCA ¶ 35,277 at 173,156.

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d

7

1387, 1390 (Fed. Cir. 1987). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984).

II.    Appeal No. 61617 – Damage To Generator And Building

The government moves to dismiss appeal number 61617 as untimely because it was not brought within six years of accrual of the claim (gov't mot. at 7). Pursuant to statute, a claim must be submitted within six years of accrual of the claim. 41 U.S.C. § 7103(a)(4)(A). We interpret the term "accrual of the claim" based upon the definition in the Federal Acquisition Regulation (FAR). *See, Kellogg Brown & Root Services, Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016). The FAR defines accrual of a contract claim, in relevant part, as the "date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known." FAR 33.201.

Here, Ford alleges that the government damaged a generator and a building in "the late 1990s" (R4, tab 3 at GR4_14). Ford's claim is dated November 14, 2017, or roughly twenty years after the cause of action accrued. Thus, Ford's claim is time-barred, unless it can establish that it submitted a valid claim at an earlier date,[4] or that it was under an infirmity sufficient to toll the statute of limitations.

Ford asserts that the "claim was actually made timely (years ago) by the Appellant and the Respondent unilaterally informed the Appellant that it would wait until the final deeds were executed to decide it" (app. resp. at 1). However, Ford cites to no record evidence in support of this statement. While Mr. Ford submitted a declaration in response to the Board's order informing the parties that it would treat the government's motion as a motion for summary judgment, his declaration does not address this issue. When a motion to dismiss denies or controverts allegations of jurisdiction, only uncontroverted factual allegations are accepted as true for purposes of the motion, and other facts underlying the jurisdictional allegations are subject to fact-finding. *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The facts supporting jurisdiction are subject to fact-finding by the Board based on our review of the record. *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816; *Raytheon Missile Sys.*, ASBCA 58011, 13 BCA ¶ 35,241 at 173,016. As the burden is on Ford to establish jurisdiction, we find that Ford has not established that it submitted a claim prior to the one submitted on November 17, 2017.

---

[4] Assuming the most generous possible interpretation of "the late 1990's" possible Ford's claim would have needed to be submitted on or before December 31, 2005 to be within the 6-year statute of limitations.

8

The Board has held that the CDA's six-year statute of limitations "may be equitably tolled when a litigant has (1) been pursuing his rights diligently, and (2) some extraordinary circumstance 'stood in his way and prevented timely filing.'" *Adamant Group for Contracting and General Trading*, ASBCA No. 60316, 16-1 BCA ¶ 36,577 at 178,136, citing *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016). In addition, equitable tolling is available "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Environmental Safety Consultants*, 97 Fed. Cl. 190, 200-01 (2011), citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). As we noted in *Raytheon Missile Systems*, in the absence of trickery, once a claim has accrued and the statute of limitations begins to run, "subsequent communications between [the contractor] and the government about the claim's merits and magnitude [do] nothing to toll it." *Raytheon Missile Systems*, 13 BCA ¶ 35,241 at 173,018.

Here, Ford's claim[5] asserts that "[o]ver the 20-year duration of our Lease in Furtherance of Conveyance, Army personnel have advised us to wait to submit claims until the final parcels of [Jefferson Proving Ground] are near to the time of transfer" (R4, tab 3 at GR4_14). Ford's counsel asserts, without any citation to record evidence, that "[t]he claim was actually made timely (years ago) by the Appellant and the Respondent unilaterally informed the Appellant that it would wait until the final deeds were executed to decide it" (app. resp. at 1). In response to the Board's order informing the parties that it would treat the government's motion as one for summary judgment and stating that Ford "should provide such relevant evidence in the form of declarations in response to this order" Ford responded only with statements of counsel to the effect that the Fords were "told repeatedly over the years that the proper time to submit a claim on the generator and building was near the time frame when the final parcels would be transferred" (app. opp'n at 12). Ford's declaration does not address this issue. Counsel additionally speculated that it "is highly probable that Army personnel who passed this information along to the Fords made mistakes, since the 6-year statute of limitations on claims had just gone into effect the year before" (*id.*).

Even assuming that the statements of counsel in opposition to the government's motion were sworn statements, they would not be sufficient to support tolling of the statute of limitations. At best, Ford makes a vague allegation that, in an unspecified number of instances, at unspecified times over a 20-year period, unspecified "Army personnel" informed him to wait until the time of transfer to assert his claim. Ford's statements do not allege that these statements were made by a contracting officer or other individual with authority to bind the government, nor does Ford explain why he did not review the terms of the LIFOC, which specifies the procedure for asserting a claim (R4, tab 8 at GR4_70-71). To establish equitable tolling, the party advocating tolling must demonstrate that it has been pursuing its rights diligently. We find that Ford has not

---

[5] Absent more, an assertion included in a claim does not constitute evidence.

satisfied this requirement. Additionally, the party advocating equitable tolling must establish that some extraordinary circumstance prevented it from timely filing its claim. Here, Ford does not allege any such extraordinary disability.

To the extent Ford is alleging that the government provision of incorrect information about filing its claim constitutes an extraordinary circumstance, we reject that claim. The courts have found, in rare instances, that "trickery" can be a basis for equitable tolling; however, here, Ford alleges error on the party of the government, rather than trickery or an intent to deny Ford its right to present its claim (app. opp'n at 12).[6] Accordingly, we find that Ford has not established equitable tolling and grant the government's motion to dismiss ASBCA No. 61617.

III.    ASBCA No. 61618 – Failure To State Sum Certain

The government moves to dismiss ASBCA No. 61618 on the grounds that Ford fails to assert a valid claim because its demand included no sum certain (gov't mot. at 8-9). Pursuant to the CDA, a contractor may, "within 90 days from the date of receipt of a contracting officer's decision" under 41 U.S.C. § 103 "appeal the decision to an agency board as provided in" section 7105. 41 U.S.C. § 7104(a). Our reviewing court, the Federal Circuit, has held that CDA jurisdiction requires both a valid claim and a contracting officer's final decision on that claim. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)). The FAR defines a claim as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain...." FAR 2.101. The Federal Circuit has held that an additional jurisdictional requirement is that a claim be submitted in writing and contain a "clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987); *Maropakis*, 609 F.3d at 1327. "The statement of claim must provide a basis for meaningful dialogue between the parties aimed toward settlement or negotiated resolution of the claim if possible, or for adequate identification of the issues to facilitate litigation should that be necessary." *Blake Constr., Co.*, ASBCA No. 34480 *et al.*, 88-2 BCA ¶ 20,552 at 103,890; *see also Holk Development, Inc.*, ASBCA Nos. 40579, 40609, 90-3 BCA ¶ 23,086 at 115,939.

Here, Ford's letter purporting to be a claim requests alternatively that the government "please remove residential restrictions" or provide "a corresponding reduction in the purchase price of the land" (R4, tab 4 at GR4_19-20). Ford's letter does

---

[6] We note that the LIFOC initially had a five year term. If the damage alleged to have occurred in the late 1990s happened before the term of the LIFOC was extended to 50 years, a government employee statement to wait until the end of the lease would not have raised a statute of limitations issue.

not request a specific reduction on the amount of the purchase price for the land, rather it notes that purportedly similar building lots near the property in question are assessed "at or above $20,000 per acre" (*id.* at GR4_19). Ford notes that at 123 of 770 acres in question could be valued at $2,575,620 at the assessed values (*id.* at GR4_20).

To the extent Ford seeks a Board award compelling the government to remove the residential restrictions from the deed, such a request would constitute a valid claim; however it would be a request for specific performance which we lack jurisdiction to entertain. *See, e.g., Versar, Inc.*, ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,959. The Board does possess jurisdiction to entertain a claim for a monetary adjustment to the purchase price of the property. However, here, we find that Ford did not assert a valid claim because it does not request a sum certain. While Ford's counsel represents that the claim could be treated as one for $2,575,620, such representations to the Board cannot correct a deficient claim. Such a resolution would deprive the contracting officer of the ability to review Ford's claim in the first instance. Even if we were inclined to treat the $2,575,620 amount as a sum certain, Ford's claim implies that this amount represents compensation for only a portion of the property. Ford's claim letter states that there are deed restrictions in the final FOST. (R4, tab 4 at GR4_18). Ford refers to lost rental income of $864,000 over the next 30 years for parcel 5 (*id.*). Ford then "highlights the effect on Parcel 1" in computing damages of $2,575,620 for 123 of 770 acres in parcel 1, before noting that the remaining acreage is "not as valuable" but that the "interior woods certainly suffers from these restrictions as well" (*id.* at GR4_19-20). The letter does not address the reduction in value of parcels 2-4, 6, and 7. The CDA "requires that claims for monetary relief must be quantified as to amount before the contracting officer is obligated to issue a final decision." *Liberty Painting Co.*, ASBCA No. 39562, 91-1 BCA ¶ 23,561 at 118,119. Thus, we hold that Ford's letter has not set forth a valid claim because it does not assert a sum certain. We grant the government's motion to dismiss ASBCA No. 61618.

## IV. ASBCA No. 61619 – Asbestos Remediation

The government seeks summary judgment on this count, asserting that there is "no obligation on the part of the government under the contract or under state or federal law to indemnify the lessee for penalties resulting from violations of the law" (gov't mot. at 10). The government notes that Ford was on notice of the existence of asbestos in the steam pipes and that Ford failed to comply with the LIFOC by obtaining written permission from the government for the work (*id.* at 11). Ford alleges that there is a factual issue in dispute regarding the responsibility for asbestos abatement with regard to the steam pipes and that this prevents the entry of summary judgment (app. opp'n at 9-10). Ford further relies upon the holding of the Court of Federal Claims in *Richmond American Homes of Colorado, Inc. v. United States*, 75 Fed. Cl. 376 (2007) finding the government liable for asbestos remediation in the base alignment and closure context pursuant to Section 330 of the National Defense Authorization Act for Fiscal

11

Year 1993, Pub. L. 102-484, 106 Stat. at 2315, 2371, 10 U.S.C. § 2687 (note) (*id.*). The government responds that any claim pursuant to Section 330 would be time-barred under that provision's two-year statute of limitations (gov't reply br. at 7-9).

The BRAC process protects purchasers of former base property in two ways. First, the base closure act requires conveyances of property to contain CERCLA section 120(h), 42 U.S.C. § 9620(h), requiring the government to provide notice of the type and quantity of hazardous substances, a description of remedial action taken and, relevant to this appeal, a covenant warranting that all remedial action necessary to protect human health and the environment with respect to hazardous substances remaining on the property has been taken prior to transfer, and that any additional remedial action found to be necessary after the date of transfer will be taken by the United States. 42 U.S.C. § 9620(h)(3)(A). However, the covenant regarding remediation is not available to a "potentially responsible party," that is, a party that contributed to the contamination, with regard to that transferred property. 42 U.S.C. § 9620(h)(3)(B).

The second protection provided in the transfer of BRAC properties is Section 330 of the NDAA. That provision provides that the Secretary of Defense will: "hold harmless, defend, and indemnify" purchasers of BRAC properties "from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage" resulting from "the release or threatened release of any hazardous substance" as a result of DoD activities. 106 Stat. at 2371. Paragraph 3 excludes from coverage "persons and entities" that "contributed to any such release" (*id.* at 2372). Indemnification is not available, unless the person or entity seeking indemnification "notifies the Department of Defense in writing within two years after such claim accrues or begins action within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the Department of Defense" (*id.*).

We first turn to CERCLA § 120(h), which provides a covenant requiring the government to remediate health and safety issues discovered after transfer. While the government asserts that the existence of asbestos insulation on the above-ground steam pipes was known and had been disclosed to Ford (R4, tab 7 at GR4_55), the record before us is not sufficiently developed to support the entry of summary judgment in favor of the government. The record before us does not establish that the Final Asbestos Report was disclosed in the LIFOC, although it was disclosed in FOSTs that are part of the record (R4, tab 11 at GR4_211; app. supp. R4, tab A at Ford-53, 62, 67). Moreover, the Final Asbestos Report disclosed asbestos in the steam pipes, but did not address fallen asbestos in the soil, at least in the portion of the report included in the record. Ford has supported with declarations statements that the steam pipe insulation was falling off of the steam lines and had been run-over by lawnmowers "for years" and that the pipes were a health and safety hazard (app. supp. R4, ex. 2, Ford. decl. ¶ 7, exs. A, B). We note that the LIFOC disclaims indemnity on behalf of the government "to the extent that

12

the [transferee] contributed to any such release or threatened release" (R4, tab 8 at GR4_68; *see also* 42 U.S.C. § 9620(h)(3)(B)). However, the Court of Federal Claims has found similar indemnity language to be ambiguous. *See American Inter. Specialty Lines Ins. Co. v. United States*, No. 05-1020C, 2008 WL 1990859 at *17 (Fed. Cl. Jan. 31, 2008) (*AISLIC*).

*AISLIC* involved claims for remediation costs for chlordane and organochlorine pesticides (OCPs) applied by the Navy prior to BRAC transfer of property that was part of the Naval Air Station Alameda. *Id.* at *1. The *AISLIC* court reasoned that the "release or threatened release" could apply to the release of the OCPs prior to transfer or the release caused by demolition of buildings (which had been sprayed with OCPs) after transfer. *Id.* at *17. Similarly here, we find paragraph 14(b) of the LIFOC to be ambiguous (R4, tab 8 at GR4_68). Ford's statements, read in the light most favorable to the non-moving party, assert that the government was responsible for releases of asbestos in the soil from asbestos falling off the steam lines over a period of years, and further was responsible for authorizing Mr. Reed's removal of the overhead steam line. Thus, pursuant to the facts presented we cannot find that the government bears no responsibility for the remediation costs.

Similarly, the LIFOC provides that Ford will indemnify and hold harmless the government from claims for damages to the property, this indemnification does not include "damages due to the fault or negligence of the United States or its contractors" (R4, tab 8 at GR4_68). Thus, to the extent Mr. Reed alleges he was given permission by the Army to remove the steam lines, we cannot find that Ford is exclusively responsible for the asbestos remediation. Thus, on the record before us, which appears to be missing several relevant documents, we cannot find that the government is not responsible for any of the release of asbestos.

With regard to a claim for reimbursement pursuant to Section 330 of the NDAA, we similarly find that factual issues prevent entry of summary judgment. The government did not address Section 330 in its motion to dismiss. After the Board informed the parties that it would treat the motion as a motion for summary judgment, Ford raised the Section 330 issue by citing *Richmond American Homes* (app. opp'n at 8-10) which had held that Section 330 makes the government liable for environmental remediation costs on BRAC properties. The government raised the section's two-year statute of limitations as a defense in its supplemental reply (gov't reply at 7-9).

The Court of Appeals for the Federal Circuit has held that a claim for remediation costs pursuant to action by a state regulator states a claim for indemnification pursuant to Section 330. *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 956 (Fed. Cir. 2013). Board precedent holds that we have jurisdiction, pursuant to the CDA, to entertain a claim pursuant to Section 330 based upon the indemnification provisions in a

13

LIFOC. *New London Development Corp.*, ASBCA No. 54535, 05-2 BCA ¶ 33,018 at 163,637.

The government's motion treats Section 330's requirement for a claim as requiring a CDA claim. However, the plain language of the statute, and case law, do not support this interpretation. The language of Section 330 requires that the "person or entity making a claim for indemnification (1) notif[y] the Department of Defense in writing within two years after such claim accrues." 106 Stat. at 2372. The language "claim for indemnification" does not imply that a CDA claim is required. The requirement is simply that the party "notif[y]" the "Department of Defense" (*id.*). The statute does *not* require that the notification contain the elements of a CDA claim (*viz.* certification of claims over $100,000, a statement that the claim is made in good faith, etc.) and, notably, the claim for indemnification is required to be made to the "Department of Defense" and not the contracting officer. Moreover, we note that the appeal period contained in section 330 is six-months (*id.*), and not the appeal period for a CDA claim.

Additionally, we note that the Court of Federal Claims has asserted jurisdiction to entertain Section 330 claims pursuant to its Tucker Act jurisdiction to entertain non-CDA contracts with the government. *See, e.g., Indian Harbor Ins. Co. v. United States*, 100 Fed. Cl. 239, 242 (2011), *rev'd* on other grounds 704 F.3d 949 (Fed. Cir. 2013); *Richmond American Homes*, 75 Fed. Cl. at 385. While the Board has the power to determine its jurisdiction *sua sponte*, here, where the government raised the statute of limitations defense for the first time in its reply brief,[7] we believe further development of the factual record is necessary before deciding the issue and deny the government's motion.

_____

[7] The parties have not addressed whether the statute of limitations in Section 330 is jurisdictional. *See Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1321-22 (Fed. Cir. 2014) (holding that the CDA's statute of limitations is not jurisdictional).

## CONCLUSION

For the reasons stated above, we grant the government's motion to dismiss ASBCA appeals number 61617 and 61618 but deny the government's motion for summary judgment with regard to ASBCA number 61619.

Dated: August 1, 2019

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61617, 61618, 61619, Appeals of Ford Lumber & Build Supply, Inc., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

15