# United States Court of Appeals
# for the Federal Circuit

---

**KELLOGG BROWN & ROOT SERVICES, INC.,**
*Appellant*

v.

**PATRICK J. MURPHY,**
**ACTING SECRETARY OF THE ARMY,**
*Appellee*

---

2015-1148

---

Appeal from the Armed Services Board of Contract Appeals in No. 58492, Administrative Judge Alexander Younger, Administrative Judge Mark N. Stempler, Administrative Judge Richard Shackleford.

---

Decided: May 18, 2016

---

THOMAS PARKER MCLISH, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, argued for appellant. Also represented by SCOTT MICHAEL HEIMBERG; TIRZAH S. LOLLAR, Vinson & Elkins LLP, Washington, DC; JOHN M. FAUST, Law Office of John M. Faust, PLLC, Washington, DC.

ELLEN MARY LYNCH, Commercial Litigation Branch, Civil Division, United States Department of Justice Washington, DC, argued for appellee. Also represented by

BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., BRYANT G. SNEE.

---

Before NEWMAN, O'MALLEY, and CHEN, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

The only issue on this appeal is whether the six-year statute of limitations of the Contract Disputes Act had run for this claim. The claim was filed by Kellogg Brown & Root Services, Inc. (KBR) for costs incurred by KBR for work done by its subcontractor in performing a contract with the Army to construct dining facilities and to provide meal and related services for troops in Iraq. On the Army's motion, the Armed Services Board of Contract Appeals (ASBCA or Board) dismissed KBR's claim for lack of subject matter jurisdiction, holding that the period of limitations had run before KBR filed this claim.[1] The claim was filed on May 2, 2012; thus, the critical date of accrual for limitations purposes is May 2, 2006.

On review of the premises and the applicable law, we conclude that the Board erred in law and on the application of law to the undisputed facts. We conclude that the KBR claim had not accrued, for limitation purposes, before May 2, 2006. The Board's dismissal is reversed; we remand for determination of the merits of the claim.

## BACKGROUND

In summary: on December 14, 2001, the Army and KBR entered into a cost-plus-award-fee contract under the Logistics Civil Augmentation Program. KBR subcon-

---

[1] *Kellogg Brown & Root Servs., Inc. v. Dep't of the Army*, ASBCA No. 58492, 14-1 BCA ¶35,713 ("Board Op.").

tracted with a joint venture between The Kuwait Company for Process Plant Construction & Contracting K.S.C. and Morris Corporation (AUST) PTY Ltd. (KCPC/Morris), to implement certain work release orders for construction of dining facilities and provision of food services at two locations in Iraq. On July 31, 2003, KBR terminated the subcontract for "fail[ure] to bring conditions to full contract performance as of 31 July, 2003," as required by the subcontract. Army Br. at 4. KCPC/Morris disputed the termination, and, at KBR's request, also continued performance until transition to a new subcontractor on September 12, 2003.

The ensuing determination of reimbursable costs and termination conditions included a suit filed in 2004 by KCPC/Morris against KBR in the United States District Court for the Eastern District of Virginia, in which KCPC/Morris stated (and KBR disputed) that an oral settlement had been reached and sought its enforcement. On January 24, 2005, KBR and KCPC/Morris entered into a written agreement, described by the Board as follows:

> [T]he parties divided KCPC/Morris' costs into two groups: (a) the "Settlement Amount" of $17,400,000; and (b) KCPC/Morris' costs incurred and profit related to its performance under the Master Agreement and the termination of the Work Releases . . . including overhead, G&A, profit and certain costs incurred in preparing requests for payment to the U.S. Government.

Board Op. at 3. This agreement also converted the default termination into a termination for convenience. *Id.*

The group (a) "Settlement Amount" of $17,400,000 was paid, and is not at issue. This CDA action concerns only the group (b) component. For the group (b) costs, the agreement stated that KBR and KCPC/Morris would cooperate "to prepare a well-supported invoice or invoices to the U.S. Government," the agreement also stating that

"[i]n no event shall KBR submit an invoice to the Government for any portion of the JOINT VENTURE's costs that KBR does not believe is supportable." 2005 Settlement Agreement at 4.

On August 26, 2006, KCPC/Morris submitted to KBR a certified claim for the "outstanding payments, costs and lost profit associated with the termination for convenience by [KBR] of the [] contract." Army Br. at 5. On November 3, 2006, KBR forwarded KCPC/Morris' claim to the Army, with a letter stating that KBR "does not certify or comment to the validity of these costs and does not have any other supporting documentation for validation." Letter from Senior Manager, Contracts, KBR, to Chief, LOGCAP Branch, Department of the Army (Nov. 3, 2006) ("KBR Letter").

The Army responded to KBR on May 30, 2007, stating that "it is KBR's management responsibility to negotiate or discuss claims with its subcontractors and the Army does not comment in advance as to whether a claim or certain costs are appropriate. Therefore, the Army will not meet with, or correspond directly with KBR's subcontractors." *See* Board Op. at 5 (quoting Army Sustainment Command Letter to KBR (May 30, 2007)). The Army refused to consider the submitted information, and directed KBR to "settle a claim by its sub with the sub, then bill the government." E-mail from Chief, Contracting Division, Logistics Civil Augmentation Program, Army Sustainment Command, to Senior Manager, Contracts, Kellogg Brown and Root, "RE: Request for additional information regarding draft settlement" (July 19, 2007) ("Army Email").

On October 10, 2007, KBR "sponsored" the KCPC/Morris claim, followed by certification of the claim by letter dated January 10, 2008. On September 8, 2010, KBR withdrew the claim, stating that "[u]pon further review of the data provided by KCPC/Morris, KBR has

determined that this constitutes a business dispute between KBR and KCPC/Morris and should be resolved in accordance with KBR's subcontract with KCPC/Morris." Letter from Senior Manager, Contracts, Kellogg Brown and Root, to Army Contracting Command, "Subject: DAAA09-02-D-0007: Subcontractor Claim KCPC/Morris." The record before us does not provide details, but KBR states that the asserted costs were eventually reduced by about $2.1 million. KBR Br. 20.

On August 4, 2011, KCPC/Morris filed suit against KBR in the United States District Court for the Eastern District of Virginia, stating in its complaint that "KBR allowed [KCPC/Morris' claim] to languish with the Government, . . . and then inexplicably withdrew the entire claim in September 2010 without consulting KCPC/Morris. . . . KBR has failed to submit and pursue the portions of the claim it concedes are well supported . . . ." Compl. at 2, *Kuwait Co. for Process Plant Const. & Contr. v. Kellogg, Brown & Root Servs., Inc.,* 1:11-cv-824-CMH/TRJ, (E.D. Va. August 4, 2011). This suit was withdrawn after KBR and KCPC/Morris entered into an agreement dated February 17, 2012, for payment to KCPC/Morris of $10,464,493, which the Board summarized as for "construction costs, equipment, expenses such as medical care and travel, meals served, overhead and G&A, profit, and termination settlement costs." Board Op. at 4–5. On May 2, 2012, KBR filed a certified claim with the Army for this amount. The contracting officer did not act on the claim, thereby placing it in "deemed denied" status. KBR then appealed to the Board.

The Army moved to dismiss, stating that the six-year CDA statute of limitations had run. The Board granted the motion, finding alternative dates for the accrual of the claim, both dates before the critical limitations date of May 2, 2006. The Board found, first, that the claim accrued on September 12, 2003, the date when KCPC/Morris ended its work under the subcontract; and

alternatively on January 24, 2005, when KBR and KCPC/Morris agreed to cooperate to present an invoice to the Army for costs above the "Settlement Amount" of $17.4 million. The Board held that there was no basis for equitable tolling of the limitations period. Board Op. at 10–11 ("With a record that reflects such lengthy time gaps as this . . . , we cannot say that KBR has actively pursued its remedies. In addition, [the record] does not support any conclusion of trickery or other misconduct.") (internal quotations marks omitted). This appeal followed.

## DISCUSSION

The limitations period is determined in accordance with the Contract Disputes Act (CDA), which provides that a claim "shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). We start with the Board's ruling that the claim accrued on the date the subcontractor ended its work.

### *"Accrual" When Subcontractor Work Ended On September 12, 2003*

The FAR defines "accrual" of a contract claim as:

> the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

48 C.F.R. § 33.201. Precedent elaborates that whether and when a CDA claim accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case. *Parsons Global Servs. v. McHugh,* 677 F.3d 1166, 1170 (Fed. Cir. 2012) ("we evaluate whether a particular request for payment amounts to a claim based on the FAR implementing the CDA, the language of the contract in dispute, and the facts of each case."); *James M. Ellett Constr. Co. v. United States,* 93

F.3d 1537, 1542 (Fed. Cir. 1996) (the existence of a CDA claim "is based on the FAR definition of a claim, the contract language, and the facts of the case"); *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc) ("we must assess whether a particular demand for payment constitutes a claim, based on the FAR implementing the CDA, the language of the contract in dispute, and the facts of the case.").

The Board reasoned that "liability was fixed" on September 12, 2003, because the claim was for the "alleged entitlement to the net costs of performance of the terminated KCPC/Morris subcontract, including costs for construction of sites C-1 and C-2, meals served, overhead, G&A and profit (statement 19)." Board Op. at 7. KBR responds that until the amount of payment to be requested of the Army was determined, the claim had not come into existence and thus could not accrue. KBR points to the Army's requirement that KBR resolve all subcontractor issues in order to "permit assertion of the claim." FAR § 33.201. "Claim" is defined as:

> "Claim" means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under 41 U.S.C. chapter 71, Contract Disputes, until certified as required by the statute. . . .

48 C.F.R. § 2.101; *see also id.* § 52.233-1(c)(same).

Fixing the date of accrual of a claim requires first that there is a "claim" as defined in the Contract Disputes Act and associated Regulations. KBR states that "a sum certain" could not have been demanded or asserted on

September 12, 2003, because the reimbursable costs and profit entitlements were not then known, and in view of disputes including termination conditions, could not reasonably have been known. KBR states that until KCPC/Morris sent KBR its documented and certified claim on August 26, 2006 (after the critical date of May 2, 2006), there was not a basis for determining the "sum certain" that is required for a CDA claim. KBR points out that the Army refused to consider the KCPC/Morris certified claim when forwarded by KBR, and that the Army required KBR to resolve all issues with the subcontractor: "KBR is required to settle a claim with the subcontractor, then bill the government." *See* Army Email.

The Army does not state that the amount of the claim was reasonably known in 2003 or 2005; the Army's argument is that liability was "fixed" by KBR's cost-reimbursal contract with the Army, although the amount of the liability was not established. Army Br. at 12–15 ("Even though the exact amount of money that KBR owed KCPC/Morris had not yet been established . . .[,] KBR's liability to KCPC/Morris was fixed because KBR knew that it owed KCPC/Morris money. . . . When KCPC/Morris' claim accrued against KBR, so too did KBR's claim accrue against the government."). However, by FAR definition, a "claim" for "the payment of money" does not "accrue" until the amount of the claim, "a sum certain," FAR § 2.101, is "known or should have been known," *id.* § 33.201.

In *Parsons Global*, this court observed that determination of whether a claim accrued is based on the particular circumstances. 677 F.3d at 1170 ("we evaluate whether a particular request for payment amounts to a claim based on . . . the facts of each case."). KBR states that it did not have sufficient information to request a sum certain until KCPC/Morris first presented its claim to KBR on August 26, 2006, after the critical date. The

Board did not find otherwise, and the Army does not argue otherwise.

Instead, the Board adopted the theory, presented by the Army, that the payment of the remaining subcontractor costs was a "non-routine" request for payment, and thus accrued as of the date the subcontractor ended its work, on September 12, 2003. *Reflectone,* explains the distinction between routine and non-routine requests for payment in CDA matters: "A routine request for payment is made under the contract, not outside it," 60 F.3d. at 1575, while a non-routine request seeks "compensation because of unforeseen or unintended circumstances," *id.* at 1577. The Board held that any termination of a subcontract is unforeseen or unintended, and therefore produces the immediate accrual of any compensation owed. Board Op. at 10.

The Board's holding is a misapplication of so-called "non-routine" requests. The origin of this rule, as explained in *James M. Ellett,* 93 F.3d at 1543, is to permit a contractor that has been injured by "some unexpected or unforeseen action on the government's part that ties it to the demanded costs," in the words of *Parsons Global,* 677 F.3d at 1171, to seek immediate payment of any damages flowing from the government's action. Termination of a subcontractor by the prime contractor is not a *per se* "unexpected or unforeseen government action" that permits and requires an immediate claim by the prime contractor. The Army does not argue otherwise.

Whether a request for payment is deemed routine or non-routine in the context of accrual of a CDA claim against the government is "dependent on the circumstances in which the requested costs arose." *Id.* at 1170. KBR states that the group (b) costs for which payment is requested are the routine costs of performance and termination, and did not arise from unexpected government

action, but from subcontractor inadequacy in performance of its obligations under the subcontract.

The Army argues that KBR's November 3, 2006 letter to the Army (after the critical date) was a "non-routine" request for payment, for this letter states that KBR "does not certify or comment to the validity of these costs and does not have any other supporting documentation for validation." *See* KBR Letter. However, the Army refused to accept this letter as a "claim," either routine or non-routine.

KBR states that whether its November 3, 2006, letter forwarding the KCPC/Morris claim is viewed as a "routine" or "non-routine" request is irrelevant to the limitations issue, for it occurred after the critical date of May 2, 2006. We agree that this letter did not retrospectively convert the termination date of September 12, 2003, into the "accrual" of a "claim" that was not even arguably presented until after the critical limitations date.

In other, related situations, precedent illustrates that the limitations period does not begin to run if a claim cannot be filed because mandatory pre-claim procedures have not been completed. *See Crown Coat Front Co. v. United States,* 386 U.S. 503, 510-12 (1967) (pre-CDA case, finding that the government contractor's claim "first accrued . . . upon the completion of the administrative proceedings contemplated and required by the provisions of the contract"). Here, the Army required that KBR resolve disputed costs with the subcontractor before KBR could present a claim for reimbursement of those costs. *See Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calf., Inc.,* 522 U.S. 192, 200–01 (1997) (rejecting as "inconsistent with basic limitations principles" the position that a limitations period can commence when the claimant's suit would be premature because required pre-suit procedures had not taken place).

The Army also states that the *Severin* Doctrine requires that this claim accrued on September 12, 2003. That is not an apt application of *Severin v. United States*, 99 Ct. Cl. 435 (1943), where the court held that "if plaintiffs had proved that they, in performance of their contract with the government[,] become liable to their subcontractor for damages which the latter suffered, that liability, though not yet satisfied by payment, might well constitute actual damages to plaintiffs and sustain their suit." *Id.* at 443. The Army states that "*Severin* describes precisely the situation that we have here—KBR became liable to its subcontractor for damages that the subcontractor suffered because of KBR's default termination decision." Army Br. 13.

The Army argues, "When KCPC/Morris' claim accrued against KBR, so too did KBR's claim accrue against the government." *Id.* at 14. *Severin* does not so hold. The prime contractor may indeed be liable for damages that the prime inflicts on the subcontractor. However, *Severin* does not hold that the date of "accrual" of the prime's claim against the government is the date of termination of the subcontractor. Accrual in accordance with FAR § 33.201 does not occur until KBR requests, or reasonably could have requested, a sum certain from the government. As the Army repeatedly told KBR here, it would not consider any of KBR's submissions until after resolution of the subcontractor issues.

The Army also argues that the government's exposure in "pass-through" suits for subcontractor claims is limited to the amount of the prime contractor's liability for the subcontractor's costs. Accepting this position for this case, it does not follow that KBR's claim against the government accrued before the subcontractor submitted its certified claim to KBR. *Severin* is concerned with liability among government, contractor, and subcontractor, *see* 99 Ct. Cl. at 443, not with dates of "accrual" of "claims" as defined by the FAR. And the *Severin* Doctrine

is directed to liability resulting from government action harming the subcontractor.

KBR criticizes the Army's position that prime contractors have ripe CDA claims against the government at the moment that dispute arises with a subcontractor, even if the government is not involved in the dispute; even if, as here, the Army required KBR to resolve its subcontractor issues before the Army would consider the claim. KBR states that the Board's ruling and the Army's position would require cost-reimbursement contractors to request payment of subcontractor costs while those costs are under dispute, lest the prime contractor lose the right to recover those costs. KBR correctly observes that the CDA does not require the filing of protective claims related to subcontractors while those claims are being resolved between the prime and sub.

We conclude that the Board erred in holding that because subcontract activity by KCPC/Morris ended on September 12, 2003, the KBR claim for group (b) costs accrued on that date.

### *Alternate Accrual in January 2005*

The Board held alternatively that KBR's claim accrued when, "in January 2005, KBR had sufficient actual knowledge to enter into a written settlement agreement segregating subcontract costs into a 'Settlement Amount' and other costs above that amount." Board Op. at 8.

This appeal relates only to the "other costs" above the Settlement Amount. The January 2005 agreement also established conversion from termination for default to termination for convenience, adding the need for KBR and the subcontractor to resolve the issue of lost profits. Indeed, the Army does not argue that "a sum certain" was known at the time the January 2005 agreement was entered.

In accordance with the FAR, KBR's claim for the "other costs" did not alternatively accrue when KBR and the subcontractor agreed to resolve these costs and cooperate to present a claim when the costs were resolved. We conclude that the Board erred in holding that KBR's claim accrued with the January 24, 2005 agreement.

### Other Arguments

We have considered the other issues and arguments. We agree with the Board that KBR's withdrawn 2008 claim did not toll the limitations period, although this is irrelevant in view of our holding that this claim did not accrue before the critical date.

We take note of the Board's concern for the lengthy pendency of this claim, and the Board's suggestion that a contractor could indefinitely delay the accrual of its claim. KBR responds that the Allowable Cost and Payment clause of the Contract Disputes Act limits the time in which a contractor may seek reimbursement after a "physically complete contract" has been performed, citing 48 C.F.R. § 52.216-7(d)(5). KBR states that the FAR requires it to submit a "completion invoice or voucher," including "settled subcontract amounts," within 120 days after indirect cost rates are determined for all years of the contract, *id.*, and KBR must then release the government from further liabilities and claims under the contract, except for specified claims and unknown claims, *id.* § 52.216-7(h). KBR points out that a contractor cannot postpone a request for payment either unilaterally or indefinitely. The Army does not argue otherwise. Nor does the Army argue that the cost-plus-award-fee contract between KBR and the government became a physically complete contract at any time prior to the filing of the claim.

The court has confirmed that the limitations period of the Contract Disputes Act is not jurisdictional. *See Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315 (Fed.

Cir. 2014). However, in view of our decision that the statute of limitations does not bar this claim, equitable tolling need not be considered.

## CONCLUSION

The Board's dismissal on statute of limitations grounds is reversed. The case is remanded to the Board for determination of the merits of the claim.

## REVERSED AND REMANDED