ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| Reed International, Inc. | ) | ASBCA Nos. 61451, 61452, 61453 |
| | ) | |
| Under Contract No. H92237-10-C-0548 *et al*. | ) | |

APPEARANCES FOR THE APPELLANT: Armani Vadiee, Esq.
Todd M. Garland, Esq.
  Smith Pachter McWhorter PLC
  Tysons Corner, VA

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrant, Esq.
  Air Force Deputy Chief Trial Attorney
Phillip E. Reiman, Esq.
Colby L. Sullins, Esq.
  Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE WOODROW

This case concerns the application of Federal Acquisition Regulation (FAR) 52.229-6, TAXES – FOREIGN FIXED-PRICE CONTRACTS (June 2003), to a series of contracts to provide private security services to military bases in Afghanistan. Reed International, Inc. (Reed) appeals the contracting officer's deemed denial of three certified claims, totaling $351,180.62, all derived by fees imposed by the Government of the Islamic Republic of Afghanistan (GIRA) on private security companies (PSC) operating in Afghanistan with more than 500 employees.

The parties elected to proceed without an evidentiary hearing, via Board Rule 11, with each side relying upon the Rule 4 file and its supplements and submitting opening and reply briefs in accordance with an agreed-upon schedule. For the reasons set forth below, we conclude that Reed's claims are time-barred. We deny the appeals.

FINDINGS OF FACT

*I. Afghan Government Regulation of Private Security Contractors*

1. In February 2008, GIRA issued a directive entitled "Procedure for Regulating Activities of Private Security Companies in Afghanistan" (PSC Regulation) (R4, tab 6 at 13).

2. Article 7 of the PSC Regulation required all PSCs to observe Afghanistan law, including the PSC Regulation: "A Security Company is obliged to observe the provisions of the valid laws of the country and this procedure." (R4, tab 6 at 18)

3. Article 10 provided: "The number of staff of each Security Company shall not be more the [sic] 500 people, unless the Council of Ministers agrees an increased number of staff." (R4, tab 6 at 19)

4. Although the PSC Regulation limited the number of PSC personnel at 500, the regulation did not provide for imposing fees on PSCs operating in Afghanistan that exceeded the 500 person limit (*see generally* R4, tab 6).

## II. *The Private Security Contracts*

5. On May 19, 2010, the Department of Defense, through the Combined Joint Special Operations Task Force-Afghanistan (CJSOTF-A) Contracting Office (government), awarded to Reed, Contract No. H92237-10-C-0519 for the provision of security services for Camp Lawton in Herat, Afghanistan (Lawton Contract) (R4, tab 1).

6. The Lawton Contract was for a base period of six months. The government extended Reed's performance through May 31, 2011. Reed provided a total of 38 personnel on the Lawton Contract during the relevant time (R4, tabs 1-5; compl. ¶ 22).

7. On June 30, 2010, the government awarded to Reed Contract No. H92237-10-C-0538 for the provision of security services for Camp Mes in Mazar E Sharif, Afghanistan (Mes Contract) (R4, tab 7).

8. The Mes Contract was for a base period of six months. The government extended Reed's performance through July 31, 2011. Reed provided a total of 61 personnel on the Mes Contract during the relevant time (R4, tabs 7-11; compl. ¶ 24).

9. On July 16, 2010, the government awarded to Reed Contract No. H92237-10 C-0548 for the provision of security services for Forward Base Thomas in Shindad, Afghanistan (Thomas Contract) (R4, tab 13).

10. The Thomas Contract was for a base period of six months. The government extended Reed's performance through July 31, 2011. Reed provided a total of 64 personnel on the Thomas Contract during the relevant time (R4, tabs 13-18; compl. ¶ 26).

2

11. Each contract incorporated by reference FAR 52.229-6, TAXES – FOREIGN FIXED-PRICE CONTRACTS (June 2003). The clause provides, in relevant part: "The contract price shall be increased by the amount of any after-imposed tax . . . that the Contractor is required to pay or bear." (R4, tabs 1, 7, 13)

12. Each contract required Reed to comply with local law (R4, tabs 1, 7, 13).

*III. Afghanistan Government Issues Presidential Directive Enforcing PSC Regulation*

13. On March 15, 2011, the GIRA issued Presidential Directive No. 7339 (PD7339) (R4, tab 6 at 113).

14. PD7339 required that all PSCs operating in Afghanistan pay a fee of 100,000 Afghanis (AFN) for each person over the 500 employee cap and 250,000 AFN for each foreign national working without an Afghan visa (R4, tab 6 at 114).

15. On March 24, 2011, the GIRA implemented PD7339 by assessing fees for each individual Reed employed over the 500 person limit (R4, tab 6 at 8, 118-19). Specifically, GIRA initially assessed a fee for 741 unregistered Afghan citizens and 67 unregistered foreign citizens (R4, tab 6 at 9). GIRA's initial fine totaled 90,850,000 AFN ($2,018,888) (R4, tab 6 at 9).

16. On March 26, 2011, Reed personnel met with Brigadier General Margaret Boor, the United States official in charge of the effort aimed at transitioning Afghanistan from PSCs to its own Afghan public protection force. General Boor explained that PSCs had 15 days from receipt of the GIRA's fee assessment to pay the fines or appeal the assessment to the GIRA. (R4, tab 6 at 6-7, 118-19)

17. On April 7, 2011, Reed appealed the assessment to the GIRA (R4, tab 6 at 9).

18. On May 3, 2011, GIRA responded to Reed's appeal and reduced the fine to account for only its 592 unregistered Afghans and 34 unregistered foreign nationals (R4, tab 6 at 9, 122). However, Reed continued to dispute the fine and the GIRA issued a final assessment on July 6, 2011 with a final reduction to 62,600,000 AFN ($1,349,138) (R4, tab 6 at 9, 124).

19. On July 13, 2011, Reed paid this fine (R4, tab 6 at 128).

*IV. Procedural History*

20. On July 12, 2017, Reed submitted its claims under each contract to the CJSOTF-A seeking reimbursement for the amounts allocable to each contract (R4, tabs 6, 12, 19).

21. Reed claimed $81,892.68 under the Lawton Contract (R4, tab 6 at 4, 11), $131,406.04 under the Mes Contract (R4, tab 12 at 4, 11), and $137,881.90 under the Thomas Contract (R4, tab 19 at 4, 11).

22. To date, the government has not issued any contracting officer final decisions (COFDs).

23. Reed appealed to the Board on December 7, 2017, on the basis of deemed denials.

DECISION

*I. Standard of Review*

Board Rule 11 permits parties "to waive a hearing and to submit [their] case upon the record." The standards of review and burdens of proof of a motion for summary judgment and a decision on the merits under Board Rule 11 vary substantially. *DG21, LLC*, ASBCA No. 57980, 15 BCA ¶ 36,016 at 175,909 n.1. Unlike a motion for summary judgment, which must be adjudicated on the basis of a set of undisputed facts, pursuant to Board Rule 11, the Board "may make findings of fact on disputed facts." *Grumman Aerospace Corp.*, ASBCA No. 35185, 92-3 BCA ¶ 25,059 at 124,886 n.13.

*II. Whether Reed Presented its Claim Beyond the Six-Year Presentment Period*

A contractor must submit its claim to the contracting officer within six years after accrual of that claim. 41 U.S.C. § 7103(a)(4)(A); *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1320 (Fed. Cir. 2014). The failure of a party to submit a contract claim within the six-year limitations period is an affirmative defense to that claim. *Alion Science & Tech. Corp.*, ASBCA No. 58992, 15 BCA ¶ 36,168 at 176,488-89.

In this appeal, the government bears the burden of demonstrating that Reed's claim accrued on or before July 12, 2011, six years prior to the date on which Reed submitted its claims to the contracting officer. The government contends that Reed's liability affixed on March 24, 2011, the date on which GIRA assessed its fines. Reed, in contrast, contends that its claim did not accrue until July 13, 2011, the date on which it paid the assessment.

*A. The Legal Basis for Reed's Claim*

The question of "whether and when a CDA claim accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case." *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016). Although the CDA does not define the term "accrual," the FAR defines "accrual of a claim" as "the date when all events, that fix the alleged liability of either the government or the contractor and permit assertion of the claim, were known or should have been known." FAR 33.201. To determine when a claim accrued, and the events that fix the alleged liability, we start by examining the legal basis for the particular claim. *Environmental Safety Consultants, Inc.*, ASBCA No. 54615, 07-1 BCA ¶ 33,483 at 165,984; *Gray Personnel, Inc.*, ASBCA No. 54652, 06-02 BCA ¶ 33,378 at 165,475-76; *Raytheon Co., Space & Airborne Systems*, ASBCA No. 57801 *et al.*, 13 BCA ¶ 35,319 at 173,376 ("To evaluate when the claimed liability was fixed, we look to the legal basis of the claim").

Our analysis of the legal basis for Reed's claim begins with FAR 52.229-6, which is incorporated into each of Reed's contracts with the government (finding 11).

FAR 52.229-6 provides:

> (d) The contract price shall be increased by the amount of any after-imposed tax or of any tax or duty specifically excluded from the contract price by a provision of this contract that the Contractor is required to pay or bear, including any interest or penalty, if the Contractor states in writing that the contract price does not include any contingency for such tax and if liability for such tax, interest, or penalty was not incurred through the Contractor's fault, negligence, or failure to follow instructions of the Contracting Officer or to comply with the provisions of paragraph (i) below.

If we accept Reed's contention that the GIRA assessment is an "after-imposed tax," then Reed's legal obligation to pay the assessment arises when Reed is "required to pay or bear" the assessment. Here, there is no dispute that GIRA demanded payment of the assessment on March 24, 2011. (Finding 15)

To counter this conclusion, Reed makes two arguments regarding its legal obligation to pay the GIRA assessment. First, Reed contends that its claim did not accrue until it actually paid the assessment (app. reply br. at 3-4). According to Reed, the legal basis for its claims is the obligation to *reimburse* it for "after-imposed" taxes.

5

Specifically, Reed contends that the government's contractual obligation to reimburse Reed only arises after Reed paid the assessment – on July 13, 2011. (App. reply br. at 3-4)

In contrast, the government contends that Reed's legal obligation to pay the penalty was set on March 24, 2011, when GIRA assessed the penalty. According to the government, incurred costs are costs for which a party has some sort of legal liability to make payment. Here, the government asserts that the government's liability would attach when "the contractor is required to pay or bear" such a tax. (Gov't br. at 5-8)

Reed relies on *Raytheon Co.*, ASBCA Nos. 57576, 57679, 13 BCA ¶ 35,209 for the proposition that a claim does not accrue until an actual payment is made (app. reply br. at 4). Reed stretches the holding in *Raytheon* too far.

In *Raytheon*, the government, as claimant, sought to recover costs it had already paid to Raytheon. The issue in *Raytheon* was when the government knew, or should have known, that it had overpaid. 13 BCA ¶ 35,209 at 172,751. In *Raytheon*, we held that the government's claims to recover costs in fiscal years in which it had already made overpayments accrued when it audited those costs and determined that they were unallowable. (*Id.*) However, with respect to subsequent fiscal years, we held that the government's claims were timely, because the government could not have known of any overpayments in these years "until the advent of these years and until payments were made under government contracts in those years" (*Id.* at 172,752) It is logical that a claim to recover an overpayment cannot accrue until the overpayment has occurred, because the claimant cannot know it has overpaid until it has made a payment.

Here, in contrast, the issue is when Reed knew, or should have known, that it had an obligation to pay the GIRA assessment. Reed knew it was obligated to pay the GIRA assessment when it received GIRA's demand letter on March 24, 2011.

Once Reed became legally obligated to pay the assessment, the costs were incurred. The fact that the final amount could change does not matter, nor does the fact that actual payment had not yet occurred. *Gray Personnel, Inc.*, 06-02 BCA ¶ 33,378 at 165,476; *see also McDonnell Douglas Services, Inc.*, ASBCA No. 56568, 10-1 BCA ¶ 34,325 at 169,528. Indeed, the CDA permits contractors to submit claims before they have incurred the total costs relating to the claim. *Gray Personnel, Inc.*, 06-02 BCA ¶ 33,378 at 165,476. This is because the incurrence of costs – and the tolling of the statute of limitations – occurs when the claimant is legally obligated to pay. The legal obligation to pay arises when a fee is assessed or a fine is levied, not when the claimant decides to actually pay the assessment or fine. *Id.* at 165,476

(holding that once a party is on notice that it has a potential claim, the statute of limitations can start to run).

Alternatively, Reed contends that the relevant legal obligation is the *government's* contractual obligation to reimburse Reed, and that obligation arises only after the date Reed paid its fine (July 13, 2011) (app. reply br. at 3). This argument misses the mark. The relevant point in time is when *Reed* became aware that it was obligated to pay, not when the government might conceivably be required to reimburse Reed for Reed's payment. The statute of limitations applies to the *claimant* (here, Reed), and is necessarily viewed from the perspective of when the claimant knew, or should have known, of its obligation to pay the fee. *KBR v. Murphy*, 823 F.3d at 628 (holding that accrual is based on when the claimant could have requested a sum certain from the government); *see also Raytheon Co., Space & Airborne Systems*, ASBCA No. 57801 *et al.*, 13 BCA ¶ 35,319 at 173,376 (holding that a claim accrues when the claimant knew, or should have known, that some costs have been incurred, even if the amount is not finalized).

On March 24, 2011, GIRA assessed a penalty on Reed in the amount of 90,850,000 AFN (finding 15). Therefore, we conclude that the legal obligation to pay the fine – the final amount of which was yet to be determined – arose when GIRA assessed the fine on March 24, 2011.

*III. Whether Reed's Appeal of the GIRA Assessment Tolls the Statute of Limitations*

We next examine whether Reed's appeal of the GIRA assessment tolls the limitations period. Reed contends that, even if it was "required to pay or bear" the taxes before payment, its claims did not accrue until after Reed exhausted its appeal rights. (App. reply br. at 6-7) In particular, Reed contends that, by announcing to the government that it was "appealing the entire imposed [GIRA] fee," Reed had not yet incurred any costs (app. reply br. at 7). We disagree, and hold that appealing the GIRA fine did not toll the limitations period.

The Federal Circuit recently held that "the limitations period does not begin to run if a claim cannot be filed because mandatory pre-claim procedures have not been completed." *Kellogg Brown & Root Services, Inc. v. Murphy*, 823 F.3d 622, 628 (Fed. Cir. 2016); *see also Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 200-01 (1997) (holding under "basic limitations principles" that the statute of limitations cannot begin until such time as the claimant is legally eligible to bring the claim).

In *KBR v. Murphy*, the Army required KBR to first resolve disputed costs with its subcontractor before KBR could present a claim for reimbursement of those costs. The Federal Circuit held that KBR's claim accrued only after KBR had resolved the

7

disputed costs with its subcontractor and the contractor had received a claim from its subcontractor. *KBR v. Murphy*, 823 F.3d at 628.

This appeal is distinct from *KBR v. Murphy* in three key ways. First, Reed seeks reimbursement from fees imposed on it, not those of a subcontractor. Second, there is no evidence that the Army ever told Reed to defer submitting its claim until after Reed had resolved its appeal with the GIRA (finding 19). *KBR v. Murphy*, 823 F.3d at 626-27. Third, Reed possessed the information necessary to present a claim for a sum certain on March 24, 2011, when Reed received GIRA's demand letter. In contrast, as the Federal Circuit points out, KBR did not possess the necessary information to present a claim for a sum certain until after the critical limitations date. (*Id.* at 627)

In this appeal, we conclude that the process of appealing the fine levied on Reed was not mandatory, but was rather an optional process Reed elected to undergo in order to potentially reduce the amount of the fine (finding 19). Therefore, the appeal process did not toll the statute of limitations.

Finally, even if we were to conclude that appealing the GIRA fine tolled the statute of limitations, it would have paused the limitation period only until the appeal was resolved. The appeal was resolved and Reed received GIRA's final assessment on July 6, 2011 (finding 19). That date is seven days outside the six-year limitations period, which began on July 13, 2011. Therefore, even if we accept Reed's argument that its claims did not accrue until after it exercised its appeal rights, we still must conclude that its claims are time-barred.

B. *Whether Reed Could File a Claim While Simultaneously Appealing the Fine*

In an alternative argument, Reed contends, without support, that it could not file a claim while simultaneously appealing the fine, arguing that to do so would have "potentially subjected Reed to liability under the False Claims Act, 31 U.S.C. § 3729 *et seq.*" Reed warns that it "would have been seeking to recover amounts from the U.S. government while at the same time arguing to the GIRA that those amounts were not due and owing." (App. reply br. at 7) We disagree.

8

FAR 52.229-6(i) expressly requires the contractor to take all reasonable action to obtain exemption from or refund of any taxes or duties:

> (i)  The Contractor shall take all reasonable action to obtain exemption from or refund of any taxes or duties, including interest or penalty, from which the United States Government, the Contractor, any subcontractor, or the transactions or property covered by this contract are exempt under the laws of the country concerned or its political subdivisions or which the governments of the United States and of the country concerned have agreed shall not be applicable to expenditures in such country by or on behalf of the United States.

Pursuant to this provision, Reed had a duty to appeal the fine levied by GIRA, if it believed in good faith that it had a reasonable basis for challenging the amount of the assessment.

In addition, FAR 52.229-6(j) requires the contractor to "promptly notify the Contracting Officer of all matters relating to taxes or duties that reasonably may be expected to result in [] an increase . . . in the contract price . . . ." This prompt notice provision is prospective in nature, in that it requires notice of taxes or duties that "may be expected" to increase the contract price. Pursuant to this provision, therefore, Reed had a duty to promptly notify the government as soon as GIRA assessed the penalty on March 24, 2011. *See*, *e.g.*, *Gazpromneft–Aero Kyrgyzstan LLC v. United States*, 132 Fed. Cl. 202 (2017) (holding that contractor's failure to provide timely notice of after-imposed taxes barred it from seeking reimbursement).

Thus, pursuant to FAR 52.229-6, Reed had a duty both to notify the government of the potential fine and to challenge the amount of the fine. In light of Reed's contractual duties, we cannot conclude that filing a claim, while simultaneously appealing the assessment, would have subjected Reed to liability under the False Claims Act.

## CONCLUSION

For these reasons, we conclude that Reed's claims under each of its contracts are time-barred. Accordingly, the appeals are denied.

Dated: April 16, 2020

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61451, 61452, 61453, Appeals of Reed International, Inc., rendered in conformance with the Board's Charter.

Dated: April 17, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

10