ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Thomas J. Davis, Inc. | ) ASBCA No. 62634 |
| | ) |
| Under Contract No. W912UM-12-C-0029 | ) |

APPEARANCE FOR THE APPELLANT:      Yong Eui Song, Esq.
                                      Central IP & Law
                                      Seoul, Korea

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                        Engineer Chief Trial Attorney
                                      Robert M. Sundberg, Esq.
                                      SoCheung Lee, Esq.
                                      Steven H. Finch, Esq.
                                      Engineer Trial Attorneys
                                      U.S. Army Engineer District, Far East
                                      Seoul, Korea

## OPINION BY ADMINISTRATIVE JUDGE PROUTY

Appellant, Thomas J. Davis, Inc. (TJD), is challenging here a contracting officer's final decision (COFD) dated June 3, 2020, seeking $1,097,808.15 for its allegedly defective design of an aircraft corrosion control facility on Osan Air Base (AB) in the Republic of Korea, pursuant to the above-captioned contract (the contract). Today, we address TJD's motion for summary judgment, which argues that the government was well aware of the qualities of the design which it now considers deficient as early as 2012, thus precluding the filing of the government's claim in 2019, which would be outside of the six-year statute of limitations imposed by the Contract Disputes Act (CDA). As explained below, we deny TJD's motion because we find there is a triable dispute of fact regarding when the government's claim accrued.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION[1]

### I. Relevant Contract Provisions

The government awarded the contract to TJD on April 10, 2012 (R4, tab 2 at 1). As alluded to above, the contract was for the provision of the design of a specified

---

[1] We note from the outset that TJD's motion for summary judgment (app. mot.) is not
    compliant with Board Rule 7(c)(2), requiring its factual assertions to be supported

corrosion control facility[2] on Osan AB, in accordance with the scope of work (SOW) included in the contract and with pre-design meeting minutes from January 2012. For these services, TJD was to be paid $858,940. (R4, tab 2 at 3)

Among many other dictates, the SOW elaborated that the corrosion control facility would be a:

> . . . two bay facility including Painting Bay, and Washing Bay and a separate room for the painting booth and plastic media blast system. No secure rooms will be needed. Air Force Corrosion Control Facility reference guide Nov 2010 (PACAF LGFIPG 4.3) shall be used for the design of this project.

(R4, tab 2 at 5)

The SOW included a schedule of when different iterations of the design would be due from TJD. The iterations were: 10% submittal, which was the proposed floor and site plans; the 30% submittal, which was the "early preliminary design"; the 90% submittal, which was the "final" design; the 95% submittal, which was the corrected final design; and the 100% submittal, which included contract documents. (R4, tab 2 at 6) The 10%, 30%, and 90% submittals were subject to On Board Review (OBR) meetings (R4, tab 2 at 8). Their due dates were contingent upon the notice to proceed and the completion of the OBRs for prior phases (*e.g.*, the 95% submittal was due 21 days after the OBR for the 90% submittal) (R4, tab 2 at 9).

The contract incorporated by reference, the standard Federal Acquisition Regulation (FAR) Disputes clause, 52-233-1 (R4, tab 2 at 53).

---

by citation to the record or additional evidence. Many of the factual assertions in TJD's motion are supported with no citation, whatsoever, or have only a vague reference to a document without explaining how that reference supports the allegations made. We strongly considered rejecting TJD's motion on this basis alone. Nevertheless, in the interest of more expeditiously resolving this dispute, we decided it is best to address the issues raised by the motion and do the best we could to determine which assertions were supported by facts that *we* could find in the record. Needless to say, this is a suboptimal use of our time and if future filings from TJD follow the model of this one, it should anticipate their rejection by the Board.

[2] A "corrosion control facility" in this context is basically a building to clean aircraft and to sand and re-paint them or their parts (*see* R4, tab 2 at 5).

The SOW explicitly stated that the review of documents by the contracting officer (CO) or his or her representative did not relieve TJD of its responsibility to check for errors or to correct them if discovered at a later date (R4, tab 2 at 29). The contract also incorporated by reference FAR 52.236-23, RESPONSIBILITY OF THE ARCHITECT-ENGINEER CONTRACTOR (APR 1984) and FAR 52.236-24, WORK OVERSIGHT IN ARCHITECT-ENGINEER CONTRACTS (APR 1984) (R4, tab 2 at 54). The first of these, FAR 52.236-23, specified that the contractor bore responsibility for the "professional quality [and] technical accuracy" of the design and that the government's review and acceptance of designs did not constitute a waiver of the government's rights under the contract. The second, FAR 52.236-24, stated that the work performed by the contractor was subject to the "general oversight, supervision, direction, control, and approval of the Contracting Officer."

II. Contract Performance

A. TJD's 30% Submittal Designed the Restoration Bay to be Suitable For Painting

TJD asserts in its motion that its 30% design submittal included "sanding/grinding and painting of aircraft" (app. mot. at 2). Indeed, our review of that design, submitted on June 5, 2012, finds that the floor plan for Sector "A" (also referred to as the "Restoration Bay") includes a paint booth, a paint mixing room, and a paint/solvent storage room in design sheet AE104 (see app. mot., encl. A at 2).[3] Similar depictions may be found in the 30% design sheet for the Sector A Heating, Ventilation and Air Conditioning (HVAC) plan, MH401 (see id. at 1).

B. TJD (Maybe?) Decides it Doesn't Need to Provide for Painting

According to TJD's motion, shortly after it submitted its 30% design, unspecified government personnel "instructed" it to "modify the subsequent designs which did not include painting of aircrafts in the Restoration Bay" (app. mot. at 2). In the context of its motion and its appeal, we take this sentence to mean that TJD was instructed to modify its design to remove the ability to paint aircraft in the Restoration Bay (that is not exactly what TJD wrote, but a literal reading of that sentence would not make sense in the context of this motion). But TJD provides no evidence for this striking claim. None, besides the assertions of counsel which, of course, are not evidence.

To the contrary, the government has provided evidence both directly and indirectly refuting it. With respect to direct evidence, the government submitted the affidavits of Mr. Victor Diaz, who was involved in 2012 meetings with TJD representing the Air Force

---

[3] TJD attached multiple "enclosures" (which are, for all intents and purposes, evidentiary exhibits) to its motions. We refer to them as "app. mot. encl.__."

3

(*see* gov't opp'n, ex. B), and Mr. Kwang Kyu Choe, an Army Corps of Engineers employee who was the CO's representative (COR) for the contract (*see* gov't opp'n, ex. A). Both gentlemen were adamant that the government never withdrew the requirement that the Restoration Bay be set up to allow for painting (*see* gov't opp'n, ex. A, ex. B).

Additional evidence refuting TJD's allegation that the government waived the painting requirement is found in multiple places in the record. One compellingly direct location is in the November 6, 2012 minutes of the November 1, 2012 ORB meeting held after the 90% design submittal was submitted (*see* app. mot., encl. D). Paragraph 3.d on page 4 of those minutes references the type of painting that will be performed in the Restoration Bay and states that "[c]onventional type (airless system) of painting the aircraft will be used and not the electrostatic system" (*id*. at 4). Other strong, but indirect, evidence that the government never directed TJD to eschew the painting requirements in the Restoration Bay is seen in the fact that the 100% design submittals plainly included the painting booth, a room for paints and solvents, and an area for paint mixing and other painting accoutrement (*see* R4, tab 3 at 110). The standards for summary judgment, as will be discussed below, favor the non-movant (the government) in factual disputes. Thus, we have no compunction, whatsoever, against finding (for purposes of this motion) that the government did not direct TJD to remove painting abilities from the Restoration Bay.[4]

Yet, as described in more detail below, TJD did change the air filtration system between the 30% and 90% submittals to a system that the government alleged in its claim (*see* R4, tab 1 at 1) and TJD agrees for the purposes of this motion, containing air filters whose limitations "meant that no painting of an aircraft [could] be conducted in the Restoration Bay" (app. mot. at 3). Indeed, in an August 7, 2012 email to Mr. Diaz, TJD expressly informed him that it was changing to dust collectors from the previously-planned three step exhaust filter system (app. mot., encl. C at 1). Assuming, as the parties appear to allege, that this change precluded painting in the Restoration Bay, we cannot determine on the record before us (and we need not decide today) whether this change was because TJD intentionally decided that the design should not be set up for painting, or because it made a mistake in its air handling design decisions.

---

[4] Typically, in a motion for summary judgment, we would merely conclude that there were disputed material facts on this matter, but in this case there is no dispute because TJD's motion presents no factual basis for its attorney's allegation and the government presents evidence directly to the contrary.

C. The Government Fails to Recognize That the Air Filtration System in TJD's Plans and Specifications Is Noncompliant

To provide slightly more detail about the revised plans, according to TJD, the change in air filtration systems involved moving from a system where two roof-mounted heating and ventilations units (HVUs) pumped a total of 78,000 cubic feet per minute (CFM) into the bay and was ducted through a three-stage filtration system for the exhaust air to a system where four (presumably smaller) roof-mounted HVUs pumped the same 78,000 total CFM of air, but the exhaust was routed through four floor-mounted dust collectors (app. mot. at 3). They are different and appear to be so in the drawings. That said, the mechanical drawing for HVAC for Sector A (MH401) does not, to the untrained eye, reflect whether painting is precluded by the items reflected therein (*see* R4, tab 3 at 231), but also does not appear significantly different (except for the far greater detail) than the 30% drawing of the same which TJD states in its motion was intended to include painting in the bay (*compare* R4, tab 3 at 231 to app. mot., encl. A at 1).

TJD argues that, factually, the information it provided about the filtration system it was providing should have alerted the government that it was not suitable for painting (app. mot. at 3-4). As a matter of interpreting the evidence before us and drawing reasonable inferences in favor of the non-moving party (the government), we find that we cannot come to this conclusion at this point in the litigation. The August 2012 correspondence did include brochures about the filters that TJD was proposing, and those brochures extolled their suitability for dust collection and "a wide range of applications," but they were silent as to painting – neither stating that they were useful in circumstances where there would be painting nor stating that they would be problematic (*see* app. mot., encl. C at 16-21). Likewise, nothing about the ventilation diagram attached to the same correspondence screams out (to this reader's untrained eye) whether it was suitable for painting or not (*see id*. at 6-15). TJD has offered no evidence that the government should have recognized that the plans were inconsistent with painting.

For its part, the government has produced evidence that it did not recognize that this change in air filtration meant that painting was no longer practicable in the Restoration Bay. Mr. Choe, the COR, testified in his declaration that he was not an expert in hazardous materials filtration systems or the standards of such systems for painting aircraft. He further stated that when he received correspondence from TJD on August 7, 2012 stating the type of filters that TJD was planning on using, he accepted that they must be appropriate since TJD was the expert on the design. Though he does not directly state the government was unaware of the alleged deficiencies in TJD's design at this time, his declaration implies that it was unaware of it until around the time of the deficiency notice in 2017. (*See* gov't opp'n, ex. A)

5

Mr. Diaz's declaration states that, at some point in 2012, TJD submitted a single filter design and he was adamant that it be corrected to a triple filter,[5] but he does not state whether it was so corrected, nor do we know whether the filter design that the government now says is deficient was the type that Mr. Diaz was alerted to and supposedly rejected. Mr. Diaz is also clear in his declaration that he never agreed to design changes that would remove painting from the project. (*See* gov't opp'n, ex. B) Thus, the declaration from Mr. Diaz neither supports the government's allegation that it was unaware that the type of filter to be used by TJD was inconsistent with painting nor does it refute it.

D. The Government Identifies Problems With TJD's Plans and Issues a Government Claim

The 90% design was dated August 29, 2012 (app. supp. R4, tab 10, at 1), and the 100% design was submitted in late February 2013 (*see* R4, tab 12). Construction of the corrosion control facility did not begin immediately after submission of the 100% plans by TJD (*see* R4, tab 13). On April 28, 2016, the government issued contract modification No. P00002 to the contract, requiring TJD add the design of air showers and a new door to the design it had already submitted for the facility (R4, tab 8).

The earliest document in the record indicating that the government recognized a problem in TJD's design of the air filtration system is a November 7, 2017 email forwarding a presentation by the local Air Force Civil Engineering Squadron that noted deficiencies in the Restoration Bay's ventilation system (R4, tabs 16 (cover email), 17 (slide presentation)). Though not noted by either party in the briefing before us, the presentation attached to that email indicates that "Bio-Environmental" rejected the Restoration Bay's ventilation system on September 28, 2017 (R4, tab 17 at 25).

As a consequence of the ventilation issues, on November 20, 2019, the CO issued a claim against TJD, seeking the reimbursement of $1,330,783.40 in costs allegedly incurred as a consequence of TJD's defective design (R4, tab 29). The claim identifies the air filtration system in the Restoration Bay as a defect and also asserts that the location of certain electronic control panels within the paint booth is a design flaw (*id*. at 1-2). The claim also asserts that the ventilation problems were recognized when air flow tests conducted on September 28, 2017 and October 10, 2017 showed that the systems were inadequate for conducting painting operations (*id*. at 5).[6] According to the government's claim, it first notified TJD of the alleged flaws on December 5, 2017 (*id*. at 5-6).

_____

[5] This would be consistent with the August 7, 2012 email from TJD to Mr. Diaz referenced earlier (*see* app. mot., encl. C at 1).

[6] Generally, we would not consider the claim to constitute evidence of anything except that the CO made the assertions therein. We include this information here because, if the government admitted earlier knowledge of the alleged design flaws,

## I.  The Standard of Review for a Motion for Summary Judgment

The standards for summary judgment are well established.  Summary judgment should be granted if it has been shown that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A non-movant seeking to defeat summary judgment by suggesting conflicting facts "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).  Nevertheless, "[t]he moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment."  *Mingus Constructors v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## II.  TJD is Entitled to Summary Judgment if it can Demonstrate that the Government Knew or Should Have Known More Than Six Years Prior to its Claim That TJD's Design was Flawed

The CDA's statute of limitations requires the submission of a claim within six years of its accrual.  *See* 41 U.S.C § 7103(a)(4)(A); *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1320 (Fed. Cir. 2014); *Abozar Afzali Constr. Co.*, ASBCA No. 61561, 20-1 BCA ¶ 37,674 at 182,891.  This rule applies equally to government claims, which are considered to be submitted when the CO "renders a final decision to the contractor."  *Sikorsky*, 773 F.3d at 1320 (citations omitted).

For purposes of the CDA's statute of limitations, "[p]recedent elaborates that whether and when a CDA claim accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case."  *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016) (citations omitted).  Thus, we turn to the relevant portion of the FAR, which provides that a claim accrues when "all events that fix the alleged liability of . . . the contractor and permit assertion of the claim, were known or could have been known."  FAR 33.201; *see also Kellogg Brown & Root*, 823 F.3d at 626; *Electric Boat Corp. v. Sec'y of the Navy*, 958 F.3d 1372, 1375 (Fed. Cir. 2020).

The government submitted its claim on November 20, 2019, which means that if all the events that fixed TJD's liability were known or should have been known by the

---

that would constitute evidence in TJD's favor as an admission by an opposing party.

government on or before November 19, 2013, the government's claim would be precluded by the statute of limitations.

III.   <u>There is a Factual Dispute Regarding When the Government Knew or Should Have Known that TJD's Plans Were Defective</u>

Thus, the question before us is when the government knew or should have known that it was getting plans from TJD that precluded the use of the Restoration Bay for painting and whether it should have recognized as much before November 19, 2013. TJD's approach to this question changed between its opening brief and its reply brief. In its opening brief, TJD initially argued that the government knew all along that it was not going to have a design consistent with painting because the government had instructed it as much sometime between the 30% and 90% submittals in 2012 (app. mot. at 2). TJD also argued in its opening brief that the change in filtration system that precluded painting in the facility should have been obvious to anybody reviewing it, and that the government must have known as much in August 2012 when TJD submitted plans that had HVU filters which were incompatible with painting (*id*. at 3-4). In its reply brief, TJD makes little argument that the government had directed it to forego making the Restoration Bay usable for painting, but instead argues that the government should have known what TJD was doing when it proposed dust collectors, rather than filters more suitable for painting (app. reply *passim*). The government, meanwhile, argues that the evidence directly disputes TJD's allegations that it removed the ability to paint in the Restoration Bay at the government direction and also presents the evidence from Mr. Choe's declaration to support its contention that it did not recognize the problem with the filters until 2017 (*see* gov't opp'n at 7-8).[7]

Applying the proper standard of review, we conclude that disputed material facts prevent us from finding that the government knew or should have known before November 19, 2013 that TJD had submitted a deficient set of plans and specifications. First, it is relatively easy for us to dispatch TJD's factual assertion that the government had instructed it to design the Restoration Bay without the ability to conduct painting in it. As detailed in the facts section, above, TJD provides no factual support for this assertion (it does not even deign to identify *who* in the government allegedly made this direction), and there is both direct and circumstantial evidence disproving it. As we explained above, under the circumstances, it is too generous to call this assertion a material fact in dispute when the allegation is both unsupported and directly contradicted.

---

[7] The government also posits that its 2016 contract modification could be seen as a date that started the running of the statute of limitations (*see* gov't opp'n at 6-7) but we do not see any basis for this argument: the plans were submitted in 2012 and early 2013 and if they should have been recognized as defective then, a decision to make a later additional change to the plans would not retroactively change that.

The closer issue is whether the shortcomings in TJD's plans were so obvious that the government should have been aware of them when they were submitted. The problem for TJD is that, except for the specifications themselves, it has provided almost no evidence to support its assertion that they were. Instead, it argues that a number of people from the government saw the plans in 2012 and that too many government employees would have seen them not to realize what was going on (*see, e.g.*, app. reply at 9). As we found, factually, above, the plans do not so obviously preclude painting that we can hold (for purposes of this motion) that they placed the government on notice of that fact. Moreover, as discussed above, the government provided a declaration from Mr. Choe asserting that the government had not recognized what TJD had done and that it counted on TJD, as the specialist designer, to select the appropriate HVAC system.[8] This is consistent with the terms of the contract, which provided that TJD bore sole responsibility for the "professional quality [and] technical accuracy" of the specifications.

In addition to Mr. Choe's declaration, which would be sufficient in today's circumstances, to support our finding that there are disputed facts preventing us from holding that the government should have recognized the flaw in the plans, we have another reason to reject that finding: concluding as we do (for this motion) that the government did not direct TJD to provide an HVAC system unable to support painting in the Restoration Bay, we are left with the question of why TJD did so. A plausible reading of the evidence before us now is that it was a simple mistake on TJD's part. If TJD could make the mistake, then perhaps it was not such a glaringly obvious error that the government should have been expected to recognize it at first blush. In any event, since "all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment," *see Mingus*, 812 F.2d at 1390, we have ample cause to conclude that TJD is not entitled to summary judgment in its favor.

---

[8] We harbor some concern about Mr. Diaz's declaration, provided by the government, because it does appear to imply that he knew that a single dust filter, like the type proposed by TJD in August 2012, would be insufficient to permit painting. As discussed in the facts section, we view this declaration as neither helping nor hurting the government since it also seems to imply that he had received some sort of assurance that the correct filter was to be used and that the Restoration Bay design would allow for painting. At trial, when more evidence is provided and a different standard of proof is applied, we may well come to a very different conclusion about what Mr. Diaz knew or should have known. But, for now, the evidence presented regarding Mr. Diaz is too inconclusive to hold against the government.

<u>CONCLUSION</u>

TJD's motion for summary judgment is denied.

Dated: July 1, 2021

_____
J. REID PROUTY
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

I <u>concur</u>

_____
RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

_____
MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62634, Appeal of Thomas J. Davis, Inc., rendered in conformance with the Board's Charter.

Dated: July 1, 2021

_____
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

10