ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Beechcraft Defense Company, LLC; | ) ASBCA Nos. 61743, 61744, 61745 |
|   Textron Aviation Inc.; and | ) |
|   Textron Aviation Defense, LLC | ) |
| | ) |
| Under Contract No. FA8617-06-D-6150 *et al.* | ) |

APPEARANCES FOR THE APPELLANT:    James J. McCullough, Esq.
                                            Michael J. Anstett, Esq.
                                            Anayansi Rodriguez, Esq.
                                              Fried, Frank, Harris, Shriver, & Jacobson LLP
                                                Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Samuel W. Morris, Esq.
                                            DCMA Chief Trial Attorney
                                            Debra E. Berg, Esq.
                                            Trial Attorney
                                            Defense Contract Management Agency
                                            Hanscom, MA

OPINION BY ADMINISTRATIVE JUDGE HERZFELD
ON THE APPELLANT'S MOTION FOR SUMMARY JUDGMENT

      Appellants Beechcraft Defense Company, LLC, Beechcraft Corporation, Textron Aviation Inc., and Textron Aviation Defense, LLC as successors to Hawker Beechcraft Corporation (together Beechcraft) move for summary judgment, asserting that the Defense Contract Management Agency's (DCMA) Cost Accounting Standards (CAS) claims are time-barred because the agency failed to present a claim (through a contracting officer's final decision) within the Contract Disputes Act's (CDA) six-year statute of limitations. For the reasons discussed below, we deny the summary judgment motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

I.    *DCAA's Audit Reports*

      In June 2011, the Defense Contract Audit Agency (DCAA) issued three audit reports asserting Beechcraft's noncompliance with several CAS provisions (ASBCA No. 61743 (61743) R4, tab 4; ASBCA No. 61744 (61744) R4, tab 4; ASBCA No. 61745 (61745) R4, tab 3). Each of these reports stated that DCAA discovered CAS noncompliances while preparing a fourth audit report of Beechcraft's January 28, 2011

forward pricing rate proposal for calendar years 2011 through 2015 (61743 R4, tab 4 at 401-04; 61744 R4, tab 4 at 127-28; 61745 R4, tab 3 at 222-25).[1]

DCAA's June 10, 2011 report found that Beechcraft failed to comply with CAS 401 – Consistency in Estimating, Accumulating, and Reporting Costs (Federal Acquisition Regulation (FAR) 9904.401), CAS 403 – Allocation of Home Office Expenses in Segments (FAR 9904.403), and CAS 418 – Allocation of Direct and Indirect Costs (FAR 9904.418) (61743 R4, tab 4 at 400).  First, contrary to Beechcraft's disclosure statements, the report found that Beechcraft incorrectly classified training costs in home office residual costs rather than a different expense pool, HR shared services, in noncompliance with CAS 401-40(a) (61743 R4, tab 4 at 401).  Second, DCAA found that this misallocation of training expenses to the wrong expense pool resulted in noncompliance with CAS 418-50(b)(2) and CAS 401-40(a) (61743 R4, tab 4 at 404-05).  Third, the report found that Beechcraft's allocation method for home office expenses did not comply with CAS 403-40(c)(2)'s requirement for identifying residual expenses and CAS 403-50(c)(1)'s allocation methodology (even when properly identifying the expenses) (61743 R4, tab 4 at 402-03).

DCAA's June 15, 2011 report found that Beechcraft failed to comply with CAS 401, CAS 406 – Cost Accounting Period (FAR 9904.406), and CAS 418 (61745 R4, tab 3 at 221).  The report found that Beechcraft immediately expensed capital restructuring costs rather than capitalizing and depreciating these costs (which violated CAS 406-61) and Beechcraft's immediate expensing was inconsistent with Beechcraft's disclosure statement (which resulted in a violation of CAS 401-40(a)) (61745 R4, tab 3 at 222-24).  Also, the report found that Beechcraft's inclusion of restructuring costs in the general and administrative cost pool rather than the material burden factor pool violated CAS 418-50(b)(1) (61745 R4, tab 3 at 225).

DCAA's June 16, 2011 report found that Beechcraft failed to comply with CAS 401 for two reasons (61744 R4, tab 4 at 126).  First, contrary to Beechcraft's disclosure statements, the report found Beechcraft's proposed material burden base did not include independent research and development material costs, which resulted in an inconsistency between Beechcraft's estimating and cost accounting practices in allocating indirect material costs (violating CAS 401-40(a) and CAS 401-50(a)(3)) (61744 R4, tab 4 at 127-28).  Second, also contrary to Beechcraft's disclosure statements, the report found Beechcraft excluded its severance costs from its fringe base, which inconsistency also violated CAS 401-40(a) and CAS 401-50(a)(3) (61744 R4, tab 4 at 128-29).

---

[1] DCMA paginated the Rule 4 files with a pre-fix and several zeroes before each page number, e.g. "G-000401."  For ease of reference, we cite only the page numbers without the pre-fix and leading zeroes.

In each of the three reports, DCAA stated that Beechcraft's failure to comply with the CAS "has resulted or may result in increased cost paid by the Government" (61743 R4, tab 4 at 401; 61744 R4, tab 4 at 127;61745 R4, tab 3 at 222). DCMA has included a declaration from a DCAA auditor that reviewed the work papers for these three reports and opines that "I did not find that DCAA either sought or obtained cost impact information from the contractor for review" (gov't resp., ex. G-1, Declaration of Rebecca Schafers ¶ 5).

On June 29, 2011, DCAA subsequently issued its audit report of Beechcraft's forward pricing rate proposal for calendar years 2011 to 2015 (61745 R4, tab 5). DCAA referenced the three prior audit reports, listing the various CAS noncompliances found in those reports (61745 R4, tab 5 at 240-41). This audit report stated that Beechcraft "has submitted adequate cost and pricing data" and considered the alleged CAS noncompliances to have a "limited impact" on Beechcraft's forward pricing rate proposal (61745 R4, tab 5 at 243). "Because the FAR and CAS noncompliances are considered to have a limited impact, we believe that the proposal is an acceptable basis for negotiation of fair and reasonable forward pricing rates" (61745 R4, tab 5 at 243).

II.     *DCMA's Notice of CAS Noncompliances*

On June 13 and June 20, 2011, DCMA's contracting officer issued initial findings of CAS noncompliance based on the audit reports (61743 R4, tab 5; 61744 R4, tab 5; 61745 R4, tab 4). Each letter directed Beechcraft to submit a "description of any change necessary to correct the failure in order to comply with CAS of the disclosed practice" within 60 days (61743 R4, tab 5 at 413; 61744 R4, tab 5 at 135; 61745 R4, tab 4 at 233). Also, each letter warned that, "when requested, the contractor is responsible for submitting either a general dollar magnitude (GDM) proposal or a detail cost-impact proposal prepared in accordance with the requirements of FAR 52.230-6(g) and (i) or (h) and (i) respectively" (61743 R4, tab 5 at 413; 61744 R4, tab 5 at 135; 61745 R4, tab 4 at 233). Beechcraft's contracts incorporated by reference FAR 52.230-6, Administration of Cost Accounting Standards (APR 2005 or MAR 2008) (CAS Administration clause) (61743 R4, tab 1 at 24; 61743 R4, tab 3 at 274; 61744 R4, tab 1 at 34; 61744 R4, tab 2 at 77; 61745 R4, tab 1 at 15; 61745 R4, tab 2 at 54).

Beechcraft responded to the initial findings of noncompliance, agreeing with some of the recommendations but also disagreeing with some of the noncompliances identified in DCAA's audit reports (61743 R4, tab 6; 61744 R4, tab 6; 61745 R4, tab 6). Nonetheless, on October 25-26, 2011, DCMA's administrative contracting officer issued final determinations, stating that Beechcraft had (1) revised its forward pricing rate proposal to "mitigate[]" any noncompliances and (2) for each noncompliance, "the condition causing the noncompliance has been corrected" (61743 R4, tab 8 at 420; 61744 R4, tab 3 at 121; 61745 R4, tab 8 at 387). The final determinations did not request that Beechcraft submit a general dollar magnitude proposal or detailed cost-impact proposal.

3

III.    *General Dollar Magnitude Proposals and Contracting Officer's Final Decisions*

At some later point (the record is unclear when), DCMA requested that Beechcraft provide general dollar magnitude proposals assessing the cost impact from the CAS noncompliances.  On April 30, 2015 and May 31, 2015, Beechcraft provided general dollar magnitude impact analyses regarding the CAS noncompliances, concluding that any noncompliances resulted in a cost impact of only $28,493 (and related only to the noncompliances regarding improper allocation of home office expenses under CAS 401, 403, and 418) (61743 R4, tab 9 at 422-23; 61744 R4, tab 7 at 139-41; 61745 R4, tab 9 at 390-92).  Indeed, Beechcraft continued to dispute whether any CAS noncompliance occurred regarding its expensing of capital restructuring costs under CAS 401, 406, and 418 (61745 R4, tab 9 at 390-91).

On April 28, 2016, DCMA requested that Beechcraft resubmit general dollar magnitude proposals relating to two of the three 2011 audit reports finding CAS noncompliances (61743 R4, tab 12 at 1220).  On July 27, 2016 and August 31, 2016, Beechcraft resubmitted its general dollar magnitude proposals and asserted (1) there was no cost impact related to the CAS 401 and 418 noncompliances regarding training costs misallocated to the home office expense pool, (2) there was only an "immaterial" cost impact relating to the CAS 403 noncompliance regarding those misallocated training costs – $172,854 out of $955 million in CAS-covered contract costs reviewed or "less than .02%," and (3) "no material impact" from the inclusion of severance and independent research and development costs in the wrong cost bases under CAS 401 – $12 million out of $966 million in CAS-covered contract costs reviewed or "1.27%" (61743 R4, tab 12 at 1220, tab 13 at 1245-46; 61744 R4, tab 8 at 145; 61745 R4, tab 10 at 394-95).

A.    *CAS 401, 403, and 418 Noncompliances Regarding Misallocation of Training Costs to Home Office Pool (ASBCA No. 61743)*

DCAA audited Beechcraft's general dollar magnitude proposal for the CAS 401, 403, and 418 noncompliances, which related to the misallocation of the training costs to the home office pool ( 61743 R4, tab 17).  Compared to Beechcraft's assertion of an immaterial cost impact of $172,854, DCAA initially found a cost impact of $664,366 from the CAS 401 noncompliance, found a cost impact of $58,533 from the CAS 401 and 418 noncompliances, and assessed that the CAS noncompliances stretched from calendar years 2007 through 2012 (61743 R4, tab 17 at 1256-57, 1268 (CAS 403 – Calendar Years 2007-2011), (CAS 401 and 418 – Calendar Years 2011-2012)).  For these CAS noncompliances, DCAA determined that significant cost impacts derived primarily from two contracts – the Joint Primary Aircraft Training System (JPATS) contract ("FA861707D6151") and the Morocco contract ("FA861709C6170") (61743 R4, tab 17 at 1262, 1264, 1266; 61745 R4, tab 16 at 417-418 (identifying Morocco contract as "FA8617-09-C-6170" and the JPATS contract as "FA8617-07-D-6151")).  DCAA also

reviewed the JPATS and Morocco contracts in conducting its 2011 forward pricing rate proposal audit (61745 R4, tab 5 at 274 (discussing "JPATS" and Morocco contracts in 2011 audit report)). After reviewing Beechcraft's response to the audit, DCAA recommended reducing the cost impact to $430,683 (61743 R4, tab 21 at 1288).

On March 28, 2017, Beechcraft and DCMA entered a tolling agreement: "[A]s consideration for DCMA not asserting a contracting officer's final decision against [Beechcraft] for the Tolled Claim on or before 10 June 2017, the period of time between and including 10 June 2017 and 7 Dec 2017 . . . shall be excluded when determining whether the Government's claim is time-barred by the CDA statute of limitations, laches, or any other time-related bars and defenses" (61743 R4, tab 16 at 1251). The tolling period began on June 10, 2017 – six years from when DCAA issued its audit report on these CAS noncompliances (61743 R4, tab 4). However, the agreement stated: "This Tolling Agreement does not constitute an admission or acknowledgment of any fact, conclusion of law, or liability by either Party to this Tolling Agreement, including, but not limited to, any admission or acknowledgment by either Party that any statute of limitations, or similar defense concerning the timeliness of asserting a claim is applicable to the Tolled Claim" (61743 R4, tab 16 at 1252).

On May 17, 2018, DCMA issued a contracting officer's final decision asserting the CAS 401, 403, and 418 noncompliances resulted in a cost impact of $598,007 (including $430,683 in principal and $167,324 in interest to the date of the decision) (61743 R4, tab 22 at 2). On August 13, 2018, Beechcraft timely appealed this contracting officer's final decision to the Board (ASBCA No. 61743).

B.  *CAS 401 Noncompliances Regarding Inclusion of Severance and Independent Research and Development Costs in the Wrong Cost Bases (ASBCA No. 61744)*

For the CAS 401 noncompliances (regarding inclusion of severance and independent research and development costs in the wrong cost bases), Beechcraft's general dollar magnitude proposal (as revised in February 2017) still concluded these CAS noncompliances resulted in "no material impact to the government" based on a cost impact of $764 (out of $955 million in relevant CAS-covered contract costs) (61744 R4, tab 11 at 156-57). Notably, that cost impact amount only related to the independent research and development costs (61744 R4, tab 11 at 156). Beechcraft maintained any severance-related costs were not incurred prior to 2010 and, thus, no "historical impact" to costs were incurred prior to the 2011 forward pricing rate proposal (61744 R4, tab 11 at 156). DCMA requested that DCAA review Beechcraft's suggested cost impacts (61744 R4, tabs 14, 16).

On May 3, 2017, DCAA issued an audit report regarding Beechcraft's exclusion of independent research and development costs from the material burden overhead base

(61744 R4, tab 14). DCAA identified $746,201 of increased costs due to this CAS noncompliance from contractor fiscal years 2005 through 2011 – the period DCAA assessed that Beechcraft was noncompliant with CAS 401 (61744 R4, tab 14 at 166). DCMA's administrative contracting officer provided DCAA with a list of CAS-covered contracts impacted by the CAS noncompliance, which DCMA compared with Beechcraft's "incomplete" list that it used in the general dollar magnitude proposal (61744 R4, tab 14 at 173). DCAA relied on the JPATS contract (like its audit of the other noncompliances discussed above), other contracts awarded during the 2005 through 2011 time period, and forward pricing rate proposals from 2005 through 2011 (to determine a representative material burden rate) (61744 R4, tab 14 at 173-74).

On June 6, 2017, DCAA issued a remedy estimate regarding Beechcraft's exclusion of severance costs from the fringe overhead base (61744 R4, tab 16). DCAA estimated $631,560 of increased costs due to this CAS noncompliance from July 2010 through March 2012 (when DCAA asserts Beechcraft corrected this noncompliance) (61744 R4, tab 16 at 179-80). DCAA determined the fringe pool and base for Beechcraft's fiscal years 2011 and 2012 "from unaudited data readily available in our files" and identified two contracts "readily available in our files" using the noncompliant rates – the two contracts were also reviewed in auditing Beechcraft's 2011 forward pricing rate proposal (*compare* 61745 R4, tab 5 at 274 (discussing "JPATS" and "Morocco" contracts in 2011 forward pricing audit report), *with* 61744 R4, tab 16 at 181 (discussing "JPATS" contract and "FA8617-09-C-6170"), *and* ASBCA No. 61744 R4, tab 18 at 184 (identifying FA8617-09-C-6170 as the "Morocco" contract)). DCAA then compiled a list of CAS-covered contracts awarded from 2006 through 2012, including the JPATS and Morocco contracts, to determine the cost estimate of noncompliance (61744 R4, tab 16 at 179-80).

On September 18, 2017, Beechcraft responded to DCAA's remedy estimate and asserted that there had only been a cost impact to the JPATS contract of $93,029, which it asserted "was fully mitigated" after a decrement of $3.3 million to that contract (61744 R4, tab 18 at 187-89). On October 4, 2017, DCAA recalculated using only the Morocco and JPATS contracts (after reviewing Beechcraft's response) and estimated a cost impact of $639,670 (61744 R4, tab 19 at 191).

On March 28, 2017, Beechcraft and DCMA entered a tolling agreement: "[A]s consideration for DCMA not asserting a contracting officer's final decision against [Beechcraft] for the Tolled Claim on or before 16 June 2017, the period of time between and including 16 June 2017 and 13 Dec 2017 . . . shall be excluded when determining whether the Government's claim is time-barred by the CDA statute of limitations, laches, or any other time-related bars and defenses" (61744 R4, tab 13 at 161). The tolling period began on June 16, 2017 – six years from when DCAA issued its audit report on these CAS noncompliances (61744 R4, tab 4). However, the agreement stated: "This Tolling Agreement does not constitute an admission or acknowledgment of any fact,

6

conclusion of law, or liability by either Party to this Tolling Agreement, including, but not limited to, any admission or acknowledgment by either Party that any statute of limitations, or similar defense concerning the timeliness of asserting a claim is applicable to the Tolled Claim" (61744 R4, tab 13 at 162).

On May 17, 2018, DCMA issued a contracting officer's final decision asserting the CAS 401 noncompliances resulted in a cost impact of $1,766,140 (including the cost impacts calculated by DCAA and interest to the date of the decision) (61744 R4, tab 21 at 3). On August 13, 2018, Beechcraft timely appealed this contracting officer's final decision to the Board (ASBCA No. 61744).

C.      *CAS 401, 406, and 418 Noncompliances Regarding Expensing of Capital Restructuring Costs (ASBCA No. 61745)*

For the CAS 401, 406, and 418 noncompliances (regarding the expensing of capital restructuring costs), DCMA requested that DCAA review Beechcraft's assertion that there was no cost impact from any of the noncompliances (61745 R4, tab 14 at 403; tab 21 at 503). On June 6, 2017, DCAA provided a remedy estimate of $13,592,730 for July 1, 2010, through March 5, 2012 – the time period DCAA assessed Beechcraft's noncompliance with CAS 401, 406, and 418 (61745 R4, tab 14 at 404). DCAA relied on "data readily available in our files," including information taken from two contracts deemed to use CAS noncompliant rates and general and administrative rates from the "audit package" for the 2011 forward pricing rate proposal audit report (61745 R4, tab 14 at 403, 405-06). At the time of the 2011 forward pricing rate proposal's audit, DCAA reviewed the two contracts later used in the 2017 remedy estimate (*compare* 61745 R4, tab 5 at 274 (discussing "JPATS" and "Morocco" contracts in 2011 forward pricing audit report), *with* tab 14 at 405 (noting "JPATS" contract and "FA8617-09-C-6170" contract in 2017 remedy estimate), *and* tab 16 at 417 (identifying "FA8617-09-C-6170" as the Morocco contract in Beechcraft's response to remedy estimate). Notwithstanding the express statement that DCAA used data from the 2011 forward pricing rate proposal audit report, a DCAA auditor asserts, "The research, information, and data on which the Remedy Estimates are based all post-date the noncompliance and [forward pricing rate proposal] audits" (gov't sur-reply, Second Declaration of Rebecca Schafers ¶ 9).

On March 28, 2017, Beechcraft and DCMA entered a tolling agreement: "[A]s consideration for DCMA not asserting a contracting officer's final decision against [Beechcraft] for the Tolled Claim on or before 15 June 2017, the period of time between and including 15 June 2017 and 12 Dec 2017 . . . shall be excluded when determining whether the Government's claim is time-barred by the CDA statute of limitations, laches, or any other time-related bars and defenses" (61745 R4, tab 11 at 396). On December 8, 2017, the parties extended the tolling agreement through December 27, 2017 (61745 R4, tab 19 at 496). On December 20, 2017, the parties extended the tolling agreement through February 16, 2018 (61745 R4, tab 20 at 499). The tolling period began on June

15, 2017 – six years from when DCAA issued its audit report on these CAS noncompliances (61745 R4, tab 3).  However, the agreement stated:  "This Tolling Agreement does not constitute an admission or acknowledgment of any fact, conclusion of law, or liability by either Party to this Tolling Agreement, including, but not limited to, any admission or acknowledgment by either Party that any statute of limitations, or similar defense concerning the timeliness of asserting a claim is applicable to the Tolled Claim" (61745 R4, tab 19 at 497; tab 20 at 500).

On May 30, 2018, DCMA issued a contracting officer's final decision asserting the CAS 401, 406, and 418 noncompliances resulted in a cost impact of $6,161,174 (including interest to the date of the decision) (61745 R4, tab 21 at 504).  On August 13, 2018, Beechcraft timely appealed this contracting officer's final decision to the Board (ASBCA No. 61745).

## DECISION

Beechcraft asserts that the statute of limitations began to run in June 2011 when DCAA issued the noncompliance and forward pricing rate proposal audit reports (app. reply at 1-2).  Beechcraft asserts the six-year statute of limitations bars DCMA's claims, because DCMA did not present its claims until May 2018 – well after June 2017 and even months beyond the extended deadlines in the tolling agreements.  DCMA counters that the statute of limitations did not begin to run until Beechcraft provided general dollar magnitude cost impact proposals in 2015 and after (gov't sur-reply at 5).[2]  For the reasons discussed below, we conclude the current record includes insufficient undisputed evidence to determine whether the 2011 audits triggered accrual of the statute of limitations.  Thus, we must deny summary judgment.

---

[2] DCMA moved to file a sur-reply because Beechcraft raised new arguments in its reply brief and we grant DCMA's motion.  Generally, sur-replies are disfavored, particularly if a non-movant has nothing new to say and simply seeks to get the last word.  *Am. Safety Council, Inc. v. United States*, 122 Fed. Cl. 426, 431 (2015).  Nevertheless, as here, we will grant DCMA's motion for leave to file a sur-reply, because the agency seeks to challenge new facts or arguments raised for the first time in Beechcraft's reply brief.  *Cooper/Ports Am., LLC*, ASBCA Nos. 61349, 61350, 19-1 BCA ¶ 37,285 at 181,402 n.1.

I.      *Standard of Review*

Board Rule 7(c) permits summary judgment motions and "looks to Rule 56 of the Federal Rules of Civil Procedure for guidance." ASBCA Rule 7(c)(2); *Fluor Intercontinental, Inc.*, ASBCA Nos. 62550, 62672, 22-1 BCA ¶ 38,105 at 185,099. FED. R. CIV. P. 56 requires granting "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Finally, on summary judgment, we apply the "substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252. Here, Beechcraft bears the burden of showing by a preponderance of evidence that the statute of limitations – an affirmative defense – barred DCMA's claims. *Doubleshot, Inc.*, ASBCA No. 61691, 20-1 BCA ¶ 37,677 at 182,904 ("The statute of limitations is an affirmative defense for which the moving party bears the burden of proof.").

II.     *The Current Record Includes Disputed Facts Regarding Whether the Statute of Limitations Bars DCMA's Claims*

"[E]ach claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). The CDA's six-year statute of limitations for presentment of a claim is not jurisdictional and, thus, may be tolled. *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1322 (Fed. Cir. 2014) ("We conclude that § 7103 is not jurisdictional and need not be addressed before deciding the merits."); *see also Menominee Indian Tribe of Wisc. v. United States*, 614 F.3d 519, 523-25 (D.C. Cir. 2010) (concluding that the CDA statute of limitations is a "claim-processing rule" and not jurisdictional).

"[W]hether and when a CDA claim accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case." *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016). The FAR defines claims accrual to mean "when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred." FAR 33.201; *Kellogg Brown*, 823 F.3d

at 626.  So, "a claimant need not be aware of the full impact of its increased costs/damages for its claim to accrue; however, for liability to be fixed at least some injury to the claimant must be shown." *Lockheed Martin Corp.*, ASBCA No. 57525, 12-1 BCA ¶ 35,017 at 172,065; *Crane & Co. v. Dep't of Treasury*, CBCA 4965, 16-1 BCA ¶ 36,539 at 178,009 ("The FAR provision defining 'accrual,' upon which the Federal Circuit in *Kellogg Brown* relied, expressly indicates that only 'some injury,' rather than the totality of injury, need occur before the limitations period on a claim starts to run.").

"Fixing the date of accrual of a claim requires first that there is a 'claim' as defined in the Contract Disputes Act and associated Regulations." *Kellogg Brown*, 832 F.3d at 626.  The FAR and Contract's Disputes clause define a monetary "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of the money in a sum certain . . . ."  FAR 52.233-1; FAR 2.101.  Consistent with the requirement for a "sum certain" for a claim to accrue, "the Board has historically held that 'use of estimated or approximate costs in determining the value of a claim is permissible so long as the total overall demand is for a sum certain.'" *Macro-Z Tech.*, ASBCA No. 60592, 19-1 BCA ¶ 37,358 at 181,657 (quoting *Gov't Serv. Corp.*, ASBCA No. 60367, 16-1 BCA ¶ 36,411 at 177,538).

We evaluate claim accrual based on an objective standard because an appellant "does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012) (citation omitted).  "Only facts that could not reasonably be known by the claimant postpone claim accrual." *Herren Assocs., Inc.*, ASBCA No. 62706, 22-1 BCA ¶ 38,122 at 185,188.

A.   *The Contract Requirement for Beechcraft to Submit a General Dollar Magnitude Proposal Did Not Automatically Suspend the Accrual of the Statute of Limitations*

DCMA asserts that it timely presented its claims in the May 2018 contracting officer's final decisions.  DCMA asserts that the CAS Administration clause suspended the accrual of the statute of limitations until after Beechcraft submitted general dollar magnitude proposals as required by the CAS Administration clause (gov't sur-reply at 5). We disagree that this presents a *per se* suspension of the statute of limitations.  Instead, claim accrual depends on the facts of each appeal.  *Kellogg Brown*, 823 F.3d at 626.

Each Contract's CAS Administration clause required Beechcraft to submit a general dollar magnitude proposal after DCMA discovered the CAS noncompliances. FAR 52.230-6(g) & (i).  DCMA informed Beechcraft that the government would require a general dollar magnitude proposal "when requested" (61743 R4, tab 5 at 413; 61744 R4, tab 5 at 135; 61745 R4, tab 4 at 233).  The CAS Administration clause requires a

general dollar magnitude proposal, "as applicable," to use one of several methods, including using a "representative sample of affected CAS-covered contracts and subcontracts[,]" but also permits "[a]ny other method that provides a reasonable approximation of the total increase or decrease" due to the CAS noncompliances. FAR 52.230-6(g)(2)(i) & (iii).

A contractor's failure to provide a general dollar magnitude proposal allows the government to (1) withhold up to 10% of payments for a contractor's CAS-covered contracts until the contractor provides a general dollar magnitude proposal, and (2) "[i]ssue a final decision in accordance with FAR 33.211 and unilaterally adjust the contract(s) by the estimated amount of the cost impact." FAR 52.230-6(j)(1) & (2). The clause says nothing about suspending the accrual period for presenting a claim. *Sikorsky Aircraft Corp. v. United States*, 105 Fed. Cl. 657, 671 (2012) ("If the contractor fails to [submit a cost proposal] within the appropriate time, then FAR 52.230-6(j) permits the government's contracting officer to issue a final decision."). Thus, the CAS Administration clause is not a pre-claim requirement that automatically suspends the accrual period for presenting a claim. *See, e.g.*, *Kellogg Brown*, 823 F.3d at 628 (concluding that "the limitations period does not begin to run if a claim cannot be filed because mandatory pre-claim procedures have not been completed" and "the Army required that KBR resolve disputed costs with the subcontractor before KBR could present a claim for reimbursement of those costs"); *see also Triple Canopy, Inc. v. Sec'y of Air Force*, 14 F.4th 1332, 1339-40 (Fed. Cir. 2021) (concluding the Foreign Tax Clause's requirement to appeal a foreign assessment constituted a "mandatory pre-claim procedure" and suspended accrual of the statute of limitations); *Elec. Boat Corp. v. Sec'y of Navy*, 958 F.3d 1372, 1376-77 (Fed. Cir. 2020) (concluding that change-of-law equitable adjustment provision was not a pre-claim procedure that suspended statute of limitations).

DCMA looks to two of our decisions that concluded the statute of limitations did not accrue until after the government received a contractor's general dollar magnitude proposal. *Boeing Co.*, ASBCA No. 58660, 15-1 BCA ¶ 35,828; *Raytheon Co., Space & Airborne Sys.*, ASBCA No. 57801, *et al.*, 13 BCA ¶ 35,319 (*Raytheon Space & Airborne*). In *Raytheon Space & Airborne*, the contractor "only reported the fact of a change, not the implications of it or other data from which the government should reasonably conclude it had a claim." *Raytheon Space & Airborne*, 13 BCA ¶ 35,319 at 173,377. Without any data to assess an injury, we concluded that it was not "reasonable for the government to have to pursue this information on its own, especially in light of the affirmative duty FAR 52.230-6(a) places on the contractor to submit a [general dollar magnitude proposal]." *Id.* at 173,376.

Similarly in *Boeing*, the contractor submitted a revised disclosure statement without providing any cost data for DCMA to assess injury but "promised to provide a cost impact submission 'shortly.'" *Boeing*, 15-1 BCA ¶ 35,828 at 175,191 (internal

11

citation omitted).  We concluded that the contractor's "failure to provide information it was contractually bound to furnish likely played some role in the government's delayed presentation of its claim."  *Id*.  Thus, in both circumstances, the government lacked sufficient information to assess cost impact when it learned of the applicable CAS changes or violations.

Unlike in *Boeing* and *Raytheon Space & Airborne*, Beechcraft has pointed to some evidence that the government could have known it suffered injury at the time it conducted the 2011 audits (even absent Beechcraft's general dollar magnitude proposals).  Here, the government discovered the CAS noncompliances while conducting an audit of Beechcraft's 2011 forward pricing rate proposal (61745 R4, tab 5 at 238-39).  When auditing Beechcraft's forward pricing rate proposal in 2011, DCAA reviewed information provided by Beechcraft and "utilized [Beechcraft's] historical incurred cost data, as reflected in the contractor's accounting system, as a basis for evaluating the reasonableness of forecasted costs" (61745 R4, tab 5 at 242).  Unlike in *Boeing*, where the government was not conducting an audit and had no reason to review the contractor's accounting system, here DCAA was conducting an audit of Beechcraft's records when it discovered the CAS noncompliances and was actively using Beechcraft's historical cost data in Beechcraft's accounting system.  *See Boeing*, 15-1 BCA ¶ 35,828 at 175,191-92.

Ultimately, the CAS Administration clause does not always suspend accrual of the statute of limitations.  There may be instances where the government knew or should have known of injury based on the information already provided and actively reviewed by the government.  On the other hand, DCMA may await a contractor's general dollar magnitude proposal if the agency has no reason to know of any injury when it learns of a CAS change or noncompliance.  We now turn to whether Beechcraft has met its burden on summary judgment to prove that DCMA should have known of some injury at the time DCAA prepared the 2011 audit of the forward pricing rate proposal, including whether the tolling agreements conceded this issue.

B.      *The Tolling Agreements Do Not Prove that the Claims Accrued in 2011*

Beechcraft asserts that the tolling agreements prove that DCMA believed the government's claims accrued in June 2011 (app. reply at 14).  The tolling agreements suspended the statute of limitations only through January and February 2018.  DCMA did not present its claims until it issued contracting officer's final decisions in May 2018.  If DCMA's claims accrued in June 2011, the May 2018 decisions would be untimely because the government presented the claims several months after the expiration of the tolling agreements.  However, we disagree that the tolling agreements prove the government conceded the claims accrued in June 2011.

The CDA permits parties to enter tolling agreements to extend the six-year statute of limitations because, as noted above, the statute of limitations is not jurisdictional.

*Sikorsky*, 773 F.3d at 1322. DCMA and contractors sometimes enter such voluntary tolling agreements to extend the time for the government to present claims. *See, e.g.*, *Sikorsky Aircraft Corp. v. United States*, 161 Fed. Cl. 314, 319 n.9 (2022). Tolling agreements are contracts, subject to normal rules of construction. *Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 682 F. App'x 921, 926 (Fed. Cir. 2017) (stating that a tolling agreement "raises an issue of contract construction"). Like any other contract, we construe the plain meaning of tolling agreements, including to assure that all provisions have meaning. *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

Here, each tolling agreement suspended the running of the statute of limitations on the six-year anniversary of the June 2011 audit reports. While the tolling agreements certainly implied that the claims accrued based on the June 2011 audit reports, the tolling agreements each made clear that the agreements did "not constitute an admission or acknowledgment of any fact, conclusion of law, or liability by either Party . . . including, but not limited to, . . . any statute of limitations, or similar defense concerning the timeliness of asserting a claim is applicable to the Tolled Claim[s]" (61743 R4, tab 16 at 1252; 61744 R4, tab 13 at 162; ASBCA No. 61745 R4, tab 11 at 397, tab 19 at 497, tab 20 at 500). Thus, because DCMA admitted nothing by entering the tolling agreements, Beechcraft cannot establish claim accrual based on the dates used in the tolling agreements.

> C. *DCMA's Claims May Have Accrued More Than Six Years Prior to Claim Presentment in the Contracting Officers Final Decisions, But the Current Record Includes Disputed Facts*

Beechcraft asserts that the statute of limitations accrued in June 2011 because DCMA had sufficient information when DCAA discovered the CAS noncompliances while auditing Beechcraft's forward pricing rate proposal (app. reply at 2-3). If true, then DCMA's presentment of claims in May 2018 was outside the six-year statute of limitations (even taking into account the tolling agreement extensions). DCMA asserts that Beechcraft has failed to establish undisputed material facts necessary for summary judgment and, in any event, DCAA lacked sufficient information in 2011 to assess cost impact (gov't sur-reply at 4-9). We agree with DCMA that Beechcraft has failed to meet its burden of establishing that the government knew of some injury in 2011 to trigger accrual of the statute of limitations. However, further development of the record might support Beechcraft's assertions.

The statute of limitations accrued when the government had "sufficient information" showing it should have known it incurred "some injury" – a cost impact – based on the CAS noncompliances. *Kellogg Brown*, 823 F.3d at 627; *Doubleshot, Inc.*, 20-1 BCA ¶ 37,677 at 182,904 ("The focus of our inquiry has been on whether the government had sufficient information to know of the claim; the statute is not suspended while the government performs an audit or if it fails to appreciate the significance of

13

information it has received."); *Lockheed Martin Corp.*, 12-1 BCA ¶ 35,017 at 172,065 (discussing need to show "some injury" to prove claim accrual); FAR 33.201.

Beechcraft asserts that DCAA's 2017 audit reports and remedy estimates relied on data available to the government during the 2011 audits and, thereby, demonstrates that the government had sufficient information in 2011 to trigger accrual of the claims (app. reply at 11-14). To assess whether DCMA should have known of a cost impact injury in 2011, the CAS Administration clause provides a framework for calculating cost impacts from CAS noncompliances: (1) use "all affected CAS-covered contracts and subcontracts" – "open or closed;" (2) assess the difference between these contracts' prices or costs "had the Contractor used a compliant practice" versus the noncompliant practice; and (3) "[c]alculate the total increase or decrease in contract and subcontracts incentives, fees, and profits associated with the increased or decreased cost to the Government . . . ." FAR 52.230-6(i).

First, DCAA's 2017 audit and remedy estimates principally relied on the same CAS-covered contracts used in conducting the 2011 forward pricing rate proposal audit. In particular, the 2011 forward pricing rate proposal audit reviewed the JPATS and Morocco contracts (61745 R4, tab 5 at 274 (discussing "JPATS" and Morocco contracts in 2011 audit report)). The 2017 cost impact audit report about CAS 401, 403, and 418 noncompliances regarding misallocation of training costs to the home office pool (ASBCA No. 61743), found that the vast majority of increased costs to the government derived from the JPATS and Morocco contracts (61743 R4, tab 17 at 1262, 1264, 1266 (JPATS contract listed as "FA861707D6151" and the Morocco contract listed as "FA861709C6170")). Similarly, DCAA's 2017 audit report regarding severance costs (ASBCA No. 61744) references the JPATS contract (61744 R4, tab 16 at 179-81 (remedy estimate). And, DCAA's 2017 remedy estimate regarding the independent research and development costs (also ASBCA No. 61744) relied on the JPATS and Morocco contracts to assess cost impact (R4, tab 14 at 173-74 (audit report)). Finally, for the CAS 401, 406, and 418 noncompliances regarding expensing of capital restructuring costs (ASBCA No. 61745), DCAA's 2017 remedy estimate also relied on the JPATS and Morocco contracts (61745 R4, tab 14 at 405 (noting "JPATS" contract and "FA8617-09-C-6170" contract in 2017 remedy estimate)).

Second, for assessing the differences between CAS compliant and noncompliant practices, the record is less clear. On the one hand, the record includes some evidence suggesting that the government had sufficient information to assess injury and could have derived a sum certain dollar figure triggering accrual of the statute of limitations. As noted above, DCAA's 2011 forward pricing rate proposal audit report stated DCAA had access to some of Beechcraft's historical incurred cost data and to Beechcraft's accounting system (61745 R4, tab 5 at 242). And, as noted above, that forward pricing rate proposal audit resulted in DCAA identifying the CAS noncompliances in the other

2011 audit reports (61743 R4, tab 4 at 401-04; 61744 R4, tab 4 at 127-28; R4, tab 3 at 222-25; 61745 R4, tab 5 at 240-41).

Notwithstanding DCAA's use of incurred cost data in the 2011 audit, DCMA asserts that the audit did not analyze "any cost impact, past, present, or future" or any "*incurred, actual cost* impact or harm to the Government" (gov't sur-reply at 7) (emphasis in original).[3] That may be true, but is irrelevant. "Accrual of a contracting party's claim is not suspended until it performs an audit or other financial analysis to determine the amount of its damages." *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,018; *Sparton DeLeon Springs, LLC*, ASBCA No. 60416, 17-1 BCA ¶ 36,601 at 178,312 ("[D]elay by a contracting party assessing the information available to it does not suspend the accrual of its claim."). DCMA did not need actual knowledge of injury from a specific cost impact analysis. *See FloorPro*, 680 F.3d at 1381. Instead, accrual can also occur if the government "should have known" of some injury based on the information it had available at the time of the 2011 audit report. *Raytheon Missile Sys.*, 13 BCA ¶ 35,241 at 173,017 ("[C]laim accrual does not turn upon what a party subjectively understood; it objectively turns upon what facts are reasonably knowable.").

On the other hand, while the record includes these hints of what the government should have known in 2011, the record is incomplete. For example, one of the 2017 remedy estimates stated that DCAA relied on "unaudited data that was readily available in our files and unaudited data generated from the contractor's accounting system" (61744 R4, tab 16 at 181). Another 2017 remedy estimate states that it relied, in part, on the "audit package" from the 2011 audit of the forward pricing rate proposal (61745 R4, tab 14 at 405). Beechcraft claims that this statement suffices to prove that the government should have known that it sustained injury in 2011. DCAA counters that "[th]e research, information, and data on which the Remedy Estimates are based all post-date the noncompliance and [forward pricing rate proposal] audits" (gov't sur-reply, att – Second Declaration of Rebecca Schafers ¶ 9). However, the record does not include the "audit package" and "unaudited data" DCAA mentioned in the 2017 remedy estimates. "A dispute centered upon the parties' dueling characterizations of non-record evidence is simply not appropriate for resolution on summary judgment." *Doubleshot, Inc.*, ASBCA No. 61691, 20-1 BCA ¶ 37,741 at 183,160.

Ultimately, Beechcraft presented this issue on summary judgment and bears the burden of proof of its affirmative defense. The record lacks the relevant evidence in dispute and, thus, must result in denial at this time. After the parties more fully develop

---

[3] Beechcraft incorrectly asserts that DCAA actually performed cost impact analyses as part of the forward pricing rate proposal audit (app. reply at 2-3). But, as noted above and as argued by DCMA, there is no evidence in the record that DCAA's audit attempted to perform any cost impact analysis (gov't sur-reply at 6).

the record, it may then be more appropriate to revisit whether the statute of limitations bars DCMA's claims.

## CONCLUSION

We deny Beechraft's motion for summary judgment without prejudice to raising the statute of limitations defense again if justified by evidence not currently in the record.

Dated:  February 3, 2023

DANIEL S. HERZFELD
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61743, 61744, 61745, Appeals of Beechcraft Defense Company, LLC; Textron Aviation Inc.; and Textron Aviation Defense, LLC, rendered in conformance with the Board's Charter.

Dated:  February 3, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals